576 N.E.2d 1354 (1991)
In re the MATTER OF the PATERNITY of Megan Alyce Buehler.
Mark H. Taylor, Appellant-Defendant,
v.
KATHRYN GAYLE BUEHLER, Appellee-Plaintiff.
No. 64A03-9103-JV-75.
Court of Appeals of Indiana, Third District.
August 28, 1991.
Thomas E. Rucinski, Sachs and Hess, P.C., Hammond, for appellant-defendant.
G. Anthony Bertig, Law Offices of James V. Tsoutsouris, Valparaiso, for appellee-plaintiff.
GARRARD, Judge.
This was a paternity action in which paternity was stipulated. The court then conducted a hearing to determine support. The father appeals from the determination that he was underemployed and should contribute $100 per week for child support.
*1355 At the outset we note, as acknowledged by the parties, that the Indiana child support guidelines apply in paternity actions. Support Guideline 2. In addition it should be noted that the question of underemployment and the potential income attributable to a party on that account are properly to be considered in defining weekly gross income for application of the guidelines under Support Rule 1, rather than as a deviation from the guidelines under Support Rule 2. See Support Guideline 3(A).
The evidence introduced at the hearing disclosed that the father graduated as valedictorian of his high school class in 1972. He then attended the University of Chicago and in 1978 received a Bachelor of Arts degree with a physics major. In the early 1980's he obtained another Bachelor of Arts degree from Purdue, this one with an influence in chemistry.
After graduation from Purdue he opened his own photography studio and has been in the photography business ever since. At the time of the hearing he was operating a photo processing lab and had been for some time. From his business he grossed about $200 per week and that had apparently been the case for some time. After graduating from Purdue he had applied for an entry level job as a chemist with Inland Steel but did not get the job. There was no evidence of any employment offers that he had rejected or of any employment opportunities that he was especially qualified for.
The mother had known the father for approximately twenty years and their personal relationship had commenced in 1981. At that time she had two children by a prior marriage. Eventually, the mother and father ended their relationship but on March 28, 1990, the mother gave birth to the child involved in these proceedings.
The mother earns about $440 every two weeks working for the Indiana Toll Road Department. In addition, she receives $100 per week from her former husband for the support of their two children.
Concerning the father's business, there was evidence that he depended upon one client and that he had been slow to solicit new customers assertedly because he did not wish to damage his business' reputation by accepting orders he could not fill. There was no evidence or finding that he had in any manner cut back his business in relation to any difficulties between the mother and him, and there was no evidence or finding that his business earnings were other than those testified to.
The mother was permitted to testify that the father always believed his business would soon earn a lot of money and that she considered him a dreamer. In her opinion the father was very bright and capable of doing anything; he could easily earn $40,000 per year in some other employment.
After the hearing the court found that the father "has the ability and potential to earn more than he is currently receiving from his existing job. It therefore ordered him to pay support at the rate of $100 per week and imposed the obligation retroactively to the date the petition had been filed.
Under these circumstances we find the court erred in finding the father underemployed and attributing additional income to him so as to raise his support contribution to $100 per week.
Support Guideline 3(A)(3) provides that where a parent is voluntarily unemployed or underemployed the court shall calculate support based upon a determination of potential income. Potential income is to be determined upon the basis of the obligor's work history, occupational qualifications, prevailing job opportunities, and earnings levels in the community. The evidence introduced at the hearing in this case falls far short of that necessary to establish a rationally based figure for potential income, and, as such, the court abused its discretion in attributing to the father the amount of potential income necessary to fix his support contribution at $100 per week.
There is, however, a more basic error in the court's order. The commentary to Support Guideline 3 discloses two purposes in the provisions calling for the determination of potential income. One is to *1356 discourage a parent from taking a lower paying job to avoid the payment of significant support. The other is to fairly allocate the support obligation when one parent remarries and, because of the income of the new spouse, chooses not to be employed. No mention is made of using child support as a tool to promote a society where all work to their full economic potential, or make their career decisions based strictly upon the size of potential paychecks. Indeed, the Preface which appears as Support Guideline 1 declares that the Income Shares Model upon which the guidelines are based, is predicated on the concept that the child should receive the same proportion of parental income that he or she would have received if the parents lived together.
It is not our function here to approve or disapprove of the lifestyle of these parties or their career choices and the means by which they choose to discharge their obligations in general. It is clear from the record that during a relationship which endured for about ten years and resulted in the birth of the child in question the father did and earned relatively the same as at the time of trial. There was no basis therefore for a determination that he was underemployed for the purpose of determining his support obligation.
The order is reversed and the cause is remanded for further proceedings consistent herewith.
HOFFMAN, P.J., and BUCHANAN, J., concur.