Kathy ULLERY, Appellant–Petitioner,

v.

Michael ULLERY, Appellee–Respondent.

No. 89A01–9208–CV–271.

Court of Appeals of Indiana,
First District.

Dec. 28, 1992.

Transfer Denied March 2, 1993.

Linley E. Pearson, Atty. Gen., Wendy Stone Messer, Deputy Atty. Gen., Office of Attorney General, Indianapolis, for appellant-petitioner.

ROBERTSON, Judge.

The State of Indiana appeals the denial of Kathy Ullery's petition to modify (increase) the child support obligation of her ex-husband, Michael Ullery.[1] The State raises one issue which does not constitute reversible error.

---

1. The State (the Indiana Department of Public Welfare as Assignee of Kathy Ullery) was a party in the action below. Therefore, the State has standing to prosecute this appeal. Ind.Appellate Rule 2(B).

## FACTS

The facts in the light most favorable to the trial court's judgment indicate that Kathy and Michael were divorced on February 22, 1985. Kathy was awarded custody of the two children born of the marriage, Melissa, born May 14, 1975, and Kimberly, born November 9, 1976. Michael was ordered to pay $50.00 per week in child support.

At the time the present petition was filed, Michael was gainfully employed. However, Michael quit his job after the petition was filed. He testified at trial that he quit because his employer was not treating him fairly. Michael denied that he quit his job as the result of the filing of the present petition. He also denied that he had chosen not to be gainfully employed and not to pay his support. The amount of support that Michael would have been obligated to pay under the Indiana Child Support Guidelines had he remained employed would have been $137.00 per week.

The trial court denied the motion to increase Michael's child support obligation noting that Michael was unemployed. The trial court ordered Michael to notify the IV-D Division of the Prosecutor's office when he becomes employed.

## DECISION

■ We note at the outset that Michael has failed to file an appellee's brief. When the appellee fails to file a brief, we may reverse the trial court if the appellant makes a prima facie showing of reversible error. *Champion Home Builders Co. v. Potts* (1989), Ind.App., 538 N.E.2d 280. However, although we may reverse upon a showing of prima facie error when the appellee fails to file an appellee's brief, we are not compelled to do so and may, in our discretion, decide the case on the merits. *S.M.V. v. Littlepage* (1982), Ind.App., 443 N.E.2d 103, *trans. denied.* In the exercise of our discretion, we decline to invoke the prima facie error rule and choose to address this appeal on the merits.

The State argues that the trial court erred in failing to increase Michael's child support obligation because Michael was voluntarily unemployed, citing Ind.Child Support Guideline 3(A). The State urges that the evidence indicates that Michael quit his job as the result of the filing of the petition to modify and intends to go back to work with his old employer.

■ The trial court's modification of a support order will be reversed only for an abuse of discretion; that is, only when the trial court's decision is clearly against the logic and effect of the facts and circumstances. *Gerber v. Gerber* (1985), Ind. App., 476 N.E.2d 531. In determining whether the trial court abused its discretion in modifying (or refusing to modify) a child support order, the court of review does not weigh the evidence or judge the credibility of the witnesses but, rather, considers only that evidence most favorable to the judgment, together with the reasonable inferences which can be drawn therefrom; and, if from that viewpoint, there is substantial evidence to support the finding of the trial court, it will not be disturbed even though the court of review may have reached a different conclusion had it been the trier of fact. *Meehan v. Meehan* (1981), Ind., 425 N.E.2d 157.

■ Where a parent becomes voluntarily unemployed or underemployed, the trial court must calculate support based upon a determination of potential income. Ind.Support Guideline 3(A)(3); *Matter of Paternity of Buehler* (1991), Ind.App., 576 N.E.2d 1354. The purpose for determining potential income is to discourage a parent from taking a lower paying job to avoid the payment of significant support and also to fairly allocate the support obligation when one parent remarries and, because of the income of the new spouse, chooses not to be employed. *Id.* However, as the *Buehler* court noted:

> No mention is made of using child support as a tool to promote a society where all work to their full economic potential, or make their career decisions based strictly upon the size of potential paychecks. .... It is not our function here to approve or disapprove of the lifestyle of these parties or their career choices

and the means by which they choose to discharge their obligations in general. 576 N.E.2d at 1356. Accordingly, in *Buehler,* we held the trial court's increase in the father's support order, based upon its finding that the father had the ability and potential to earn more than he was currently receiving from his existing job, to be an abuse of discretion. *Id.* We noted that the father was earning relatively the same amount he was earning when his relationship with the child's mother was intact. *Id.*

■ In the present case, Michael testified that he quit his job because his employer was not treating him fairly. Moreover, he denied that he quit his job because of the filing of the present petition and he denied that he had chosen not to be gainfully employed and not to pay his support.

As noted above, we do not weigh the evidence or judge the credibility of the witnesses. The record supports the trial court's determination that Michael was not voluntarily unemployed or that his current decline in income was purposely brought about to reduce his support payments. *See Garrod v. Garrod* (1992), Ind.App., 590 N.E.2d 163. Therefore, we cannot conclude that the trial court's decision not to increase Michael's child support obligation was an abuse of discretion.

Judgment affirmed.

BAKER, J., concurs in result with separate opinion.

RATLIFF, J., dissents with separate opinion.

BAKER, Judge, concurring.

I concur with Judge Robertson's reasoning and the result he reaches. It was within the trial court's sound discretion to determine whether Michael's unemployment was "voluntary" under Ind.Child Support Guideline 3(A)(3), and the evidence supports the trial court's determination it was not. I write separately, however, to emphasize that, in my opinion, there may be legitimate reasons for a parent to leave his or her employment or to take a lower paying job other than to avoid child support obligations. In such cases, I do not believe

the support guidelines mandate a conclusion that the parent is voluntarily unemployed or underemployed.

I agree fully with Senior Judge Ratliff's statement that a parent should not be able to use his or her unemployment or underemployment to escape parental responsibilities. I am fearful, however, that the good judge's reasoning permits courts to enter the business of dictating a parent's employment decisions even when those decisions are not occasioned by the desire to avoid child support obligations. When a parent leaves his or her employment because of unfair treatment on the job, for example, the parent's resulting unemployment and loss of wages may, in some cases, be properly categorized as involuntary. Similarly, I cannot believe the child support guidelines dictate that a parent may never make a career move to a lower paying job without also finding he or she is suddenly underemployed for child support purposes. For example, surely a lawyer's move from a lucrative private law practice to a lower paying public service position or judgeship would not compel the court to conclude the move necessarily resulted in the parent's voluntary underemployment under Child Supp. G. 3(A)(3). It would seem Senior Judge Ratliff's interpretation of the guideline demands just that result.

Finally, permitting parents' employment decisions to be completely controlled by child support obligations seems to suggest children have the right to demand that their parents meet their maximum individual earning capacities. I know of no such right. The determination of whether there are legitimate reasons for the parent's career choice or whether the parent is simply trying to avoid his or her child support obligations, *i.e.,* whether the parent is a deadbeat, is best left to the trial court's sound discretion after hearing the evidence and viewing witness demeanor.

Because the evidence supports the trial court's conclusion that Michael was not voluntarily unemployed when he quit his job because of unfair treatment, I concur in affirming the trial court's judgment deny-

ing Kathy's petition to increase Michael's child support obligation.

RATLIFF, Judge, dissenting.

When a parent subject to a support order for the benefit of his minor dependent children voluntarily terminates his employment, he should not be able to use his unemployment as a means of escaping his responsibilities to his children. In fact, he should be treated as if he remained employed at his former job and his support obligations determined accordingly.

Ind.Child Support Guideline 3(A)(3) specifically provides:

"If a parent is voluntarily unemployed or underemployed, child support shall be calculated based on a determination of potential income. A determination of potential income shall be made by determining employment potential and probable earnings level based on the obligor's work history, occupational qualifications, prevailing job opportunities, and earnings levels in the community...."

The Commentary to the above quoted guideline provides: "One purpose of potential income is to discourage a parent from taking a lower paying job to avoid the payment of significant support." Here, Michael Ullery did more than take a lower paying job—he quit his job. Such conduct equally should be discouraged.

In *Gerber v. Gerber* (1985), Ind.App., 476 N.E.2d 531, the non-custodial mother subject to a support order for her children contended that the trial court erred in failing to modify the support order where her earnings were substantially reduced. However, she had remained employed until two weeks before the hearing on her petition to modify. We affirmed the denial of her petition, stating:

"A non-custodial parent under a support order cannot voluntarily terminate her employment and then, less than two weeks later, complain to the court the order must be modified because payment is no longer within her means. *To allow Michelle to do so would open the door for every non-custodial parent to do likewise in order to avoid payment of their legal and moral obligations to support their children. Michelle cites no authority which would support her position, and public policy would preclude such a potentially disasterous [sic] holding.*"

*Id.* at 533 (emphasis added).

In *Billings v. Billings* (1990), Ind.App., 560 N.E.2d 553, we affirmed an increase in support where the obligor had voluntarily quit a lucrative job and was underemployed. Citing the Child Support Guidelines, we approved the admission of the obligor's tax returns from prior years to determine potential income. *Id.* at 555–56.

To the extent the majority opinion relies upon *Matter of Paternity of Buehler* (1991), Ind.App., 576 N.E.2d 1354, and *Garrod v. Garrod* (1992), Ind.App., 590 N.E.2d 163, that reliance is misplaced. Neither of those cases is apposite. In *Garrod,* nothing in the record revealed that the husband was voluntarily unemployed or that he had reduced his income in an effort to avoid support payments. *Id.* at 168. Here, it is significant that Michael quit his job after being served with Kathy's petition to modify. *See* Record at 39–40. The trial court merely found that Michael was unemployed. Record at 62. Given the lack of a finding that his unemployment was not voluntary, the trial judge should have followed the guidelines and determined potential income.

*Buehler* also is clearly distinguishable. There, the obligor was earning the same as he had for the ten years of the parties' relationship. *Buehler,* 576 N.E.2d at 1356. Thus, there was no intentional reduction of income to defeat payment of a proper amount of support. *Id.*

I agree with Judge Garrard's observation in *Buehler* that the support guidelines are not to be used as a method of social engineering to assure that everyone is employed to his or her full earning potential; however, such is not the case here. Under the appropriate guideline, based upon his earning potential as determined from his actual earnings from the job he quit upon receiving Kathy's petition to modify, Mi-

chael should have been ordered to pay $137.00 per week rather than the $50.00 of the order then in force. Michael should not be permitted to escape his legal and moral obligation by the device of quitting his job.

I am aware of Michael's contention he quit his job because of perceived unfair treatment by his employer. However, while not condoning unfair treatment by his employer if such was the case, suffice it to say that many persons find some aspects of their employment distasteful but, nevertheless, keep working to meet their obligations. Perhaps Michael should have sought other employment to find relief from the treatment he regarded as unfair, but until that happened, either he should have continued his employment, or, pursuant to the guidelines, his support obligation should have been determined based upon that employment in the event of his voluntary unemployment.

I believe the majority opinion sends a message to disgruntled support obligors that they can relieve themselves of their obligations by quitting their jobs. I do not subscribe to such a view and do not believe the law can or should tolerate such a result.

For the reasons stated, I respectfully dissent.