In re the Marriage of Joe E. ELLIOTT, Appellant–Petitioner,

v.

Patricia R. ELLIOTT, Appellee–Respondent.

No. 67A01–9307–CV–222.

Court of Appeals of Indiana, First District.

June 7, 1994.

Rehearing Denied Sept. 1, 1994.

Thomas M. Frohman, Legal Services Organization of Indiana, Inc., Bloomington, for appellant.

Elizabeth A. Justice, Wernle, Ristine & Ayers, Crawfordsville, for appellee.

BAKER, Judge.

Again we must confront the issue of pauper petitions in civil appeals to decide what evidence is necessary to establish indigency. Appellant-petitioner Joe Elliott argues that the trial court abused its discretion by denying his pauper petition to proceed on appeal. He also claims the trial court erroneously ordered him to pay child support in excess of the Ind.Child Support Guidelines.

*FACTS*

On December 6, 1991, the trial court dissolved Joe and Patricia Elliott's marriage incorporating their settlement agreement. Patricia was awarded custody of their daughter, Betty, and Joe agreed to pay $89.25 per week as child support. This figure was computed on a child support worksheet the parties jointly filed with their settlement agreement and was based upon Joe's weekly gross income of $400 as a brick mason and Patricia's weekly gross income of $200.

During the first four months of 1992, Joe earned $200–$400 per week as a truck driver. After losing that job because he failed a driver's certification test, Joe worked at Cloverdale AgriCenter for the next seven months in 1992 earning $280 per week. In November 1992, he was discharged without good cause when he had an emergency appendectomy.

In September 1992, Joe filed a petition to modify support contending his change of jobs was a substantial change in circumstances requiring a reduced support order. Patricia filed a contempt petition for his failure to pay full support. At a November hearing on those petitions, Joe alleged that his average weekly income at the AgriCenter was only $280. The trial court determined that Joe's irregular employment was not sufficient evidence of his inability to pay support and thus did not constitute a substantial change to warrant reduction of the 1991 support order. The court further held that less than twelve months had passed since the order sought to be modified so that modification was not warranted under IND.CODE 31–1–11.5–17(a)(2). The court also found that Joe was in contempt for failing to pay Patricia's attorney's fees and child support. The court denied Joe's modification petition on February 16, 1993.

Following his discharge from AgriCenter, Joe was unemployed from November 1992 until February 1993 when he began his present maintenance position at a truck stop. On March 8, 1993, Joe filed another petition to modify support, alleging that the 1991 support order exceeded 20% of the amount recommended by the child support guidelines. At the hearing, Patricia objected that Joe's petition was untimely because one year had not passed since the February 1993 order denying modification. This objection was overruled.

Joe submitted a support worksheet showing that he should pay $31 per week. Record at 21. Patricia filed her own worksheet computing Joe's support to be $50 per week. Record at 24. Both worksheets were in agreement on the following weekly figures: Patricia's income of $354, Joe's $20 support order for his first two children, his $80 support for his next four children born before Betty, Patricia's $128 support for her two children born before Betty, and the work-related child care expense of $40 for Betty. The worksheets differed only as to Joe's income. Joe contended that his sole income was $200 per week from the truck stop. He presented his check stubs to support his contention. Patricia asserted that Joe's income was $280. She testified that Joe told her that he had done some masonry work in March 1992. She suggested that Joe had income in addition to that from the truck stop.

On May 19, 1993, the trial court issued a modified support order reducing Joe's obligation to $50 per week plus $10 weekly arrearage. Citing *Campbell v. Criterion*

*Group* (1992), Ind., 605 N.E.2d 150, Joe filed a petition for relief from paying transcript and record preparation fees and other court costs in conjunction with filing this appeal. Upon the trial court's denials of his pauper petition and his subsequent motion to reconsider, Joe requested this court to review the denial of the pauper petition. We heard oral argument on October 19, 1993, and ordered the praecipe be honored and the appeal filed withholding the collection of fees and expenses until our determination of the indigency issue. We directed the parties to prepare a statement of the evidence in compliance with Ind.Appellate Rule 7.2 and to address the indigency and support modification issues. Upon the parties' compliance with our order, we heard oral argument on all of the issues on May 16, 1994.

## DISCUSSION AND DECISION

### I. Modification

· ■ Initially, we consider Patricia's argument that Joe's March 1993 petition was untimely under IND.CODE 31–1–11.5–17(a), which provides that modification shall be made:

(2) upon a showing that:

(A) A party has been ordered to pay an amount in child support that differs by more than twenty percent (20%) from the amount that would be ordered by applying the child support guidelines; and

(B) The order requested to be modified or revoked was issued at least twelve (12) months before the petition requesting modification was filed.

Patricia contends that the twelve-month period must be counted from the February 1993 order denying modification and that the trial court erred in refusing to deny Joe's petition on that ground.[1] Her argument is flawed in that the February 1993 order was not the type of support order referred to in I.C. 31–1–11.5–17(a)(2)(B). I.C. 31–1–11.5–17(a)(2)(B) designates "the order requested

to be modified or revoked" as the essential order from which the one-year period runs. The order sought to be modified may not necessarily be the most recent order regarding child support as is evidenced here. Joe did not request that the February 1993 order that denied a reduction in child support be modified or revoked. Instead, Joe requested that the initial child support order issued in December 1991 be modified. *See Brown v. Brown* (1993), Ind.App., 609 N.E.2d 1173, 1175 (June 1991 petition timely filed challenging June 1990 modification order imposing no support upon father). Thus, the trial court properly overruled Patricia's objection that Joe's petition was untimely because more than twelve months had passed since the 1991 order.

■ Joe contends the trial court abused its discretion when it ordered him to pay $50 as weekly child support instead of $31. In reviewing a determination of whether child support should be modified, we will reverse the decision only for an abuse of discretion. *Kinsey v. Kinsey* (1993), Ind.App., 619 N.E.2d 929, 932. We review the evidence most favorable to the judgment without reweighing evidence or reassessing witness credibility. *Id.* An abuse of discretion occurs when the decision is clearly against the logic and effect of the facts and circumstances before the court, including any reasonable inferences therefrom. *Id.*

Ind.Child Support Guideline 3(B) mandates the submission of a worksheet calculating the support of the parents. When a party disagrees with the gross income reported by the other party, separate worksheets should be submitted showing their respective opinions of the support obligations. Commentary on Child Supp. G. 3(B). It would be helpful if the trial court's order included the gross income it determined for each party. *Id.* Although the trial court did not enter a finding designating its determination of Joe's income, it did accept Patricia's calculation that Joe was responsible for $50 per week child support, which was based upon her imputation of $280 of weekly gross income to Joe. Patricia de-

---

1. In his reply brief, Joe contends that Patricia waived this argument by failing to raise the untimeliness argument at the hearing. Patricia filed a supplemental record reflecting that she properly raised the issue and the trial court rejected it. Supp.R. at 1–2. Accordingly, we do not find waiver.

fends the court's determination by arguing that the trial court properly attributed Joe's potential income since he was voluntarily underemployed, or alternatively, that Joe had not reported his full income. Joe contends either approach was an abuse of discretion. We consider first whether voluntary underemployment supports the modification.

■ Potential income is utilized in figuring child support to discourage a parent from accepting a lower paying job in order to avoid significant support payments. *Ullery v. Ullery* (1992), Ind.App., 605 N.E.2d 214, 215, *trans. denied.* Potential income is determined from work history, occupational qualifications, prevailing job opportunities, and earning levels in the community. *Castaneda v. Castaneda* (1993), Ind.App., 615 N.E.2d 467, 471. Patricia urges that Joe's past work history showed that Joe was voluntarily underemployed. Joe had worked as a brick mason and a truck driver, and was employed at an agricultural company. It is reasonable to infer that because the trial court attributed $280 weekly gross income to Joe, this amount was based upon his past employment at the agricultural center. Joe explained the reason for his termination there. His explanation was not contradicted. Joe did not desire to seek reemployment at the agricultural center because following his successful hearing seeking unemployment benefits, his former manager was no longer friendly with him. Following four months of unemployment, Joe accepted a maintenance position which paid $80 per week less than the AgriCenter job.

■ Patricia claims that Joe failed to present evidence that he was precluded from seeking jobs with other masonries, trucking companies, or agricultural businesses. However, she did not present evidence that such positions were available. Child support orders cannot be used to force parents to work to their full economic potential or make their career decisions based strictly upon the size of potential paychecks. *In the Matter of Paternity of Buehler* (1991), Ind.App., 576 N.E.2d 1354, 1356. Thus, even considering Patricia's contention that Joe was capable of earning more than he was currently, such finding would be an abuse of discretion con-

sidering the given facts. *See Ullery,* at 216. As has been previously stated, legitimate reasons may exist for a parent to leave his employment or to take a lower paying job other than to avoid child support obligations. *Id.* (Baker J., concurring opinion). The facts here do not support a conclusion that Joe was voluntarily underemployed.

■ Patricia also argues that the trial court could have found that Joe had not reported all of his income. She testified that in the past, Joe had accepted cash for his masonry services but had not reported that income to the Internal Revenue Service. Patricia also testified that she believed Joe had done masonry work in March 1992, but did not report that income. Thus, she contends that Joe was not credible when he claimed that his sole source of income was $200 from the truck stop. Joe attempted to refute Patricia's testimony by presenting his pay stubs that reflected he was working full-time at the truck stop in March 1992. Because the evidence is not uncontroverted on this issue and the result is dependent upon a credibility determination, we may not substitute our opinion for that of the trial court's. Considering the facts most favorable to the judgment without reassessing credibility or reweighing the evidence, we cannot say that the trial court abused its discretion. We affirm the child support order of $50 per week.

## II. Pauper Petition

■ Joe filed a petition with the trial court to waive the $250 appellate filing fee and the county clerk certification fee. The trial court summarily denied the pauper petition. Joe argues that the denial was an abuse of discretion. Indigent civil litigants have the right to proceed on appeal *in forma pauperis. Campbell,* at 158–59. We observe that Joe followed the correct procedure to appeal the trial court's denial. Indiana law requires indigency petitions to precede other appellate pleadings. *Id.* at 159 (citing *Offutt v. Sheehan* (1976), 168 Ind.App. 491, 344 N.E.2d 92). Joe complied by filing a request for us to review the trial court's denial of his pauper petition before seeking an appeal on the merits of the support ruling. Upon our condi-

tional waiver of the appellate filing fee for Joe to proceed with his appeal, he prepared a statement of the evidence and proceedings pursuant to App.R. 7.2 as *Campbell* instructs. *Id.* at 160–61.

To obtain waiver of the fees incurred to appeal, Joe was required to show that he is indigent. In *Campbell,* the court reiterated the standard governing indigency as being closely related to the purpose for which the status is sought. *Id.* at 159 (citing *Meeker v. State* (1979), 182 Ind.App. 292, 395 N.E.2d 301, 307, n. 5). *Meeker* found that indigency for purposes of appointment of counsel was not the same as indigency for waiving court costs and fines. *Meeker* delineated that the determinations were related, but independent. *Meeker,* 395 N.E.2d at 307, n. 5. Keeping that distinction in mind, we review the standard for determining indigency in appointment of counsel cases.

 Both parties cite the federal poverty guidelines to support their opposing arguments of whether Joe is indigent.[2] The 1993 guidelines provided that a family of six with annual gross income below $19,270 was impoverished. *See* 58 Fed.Reg. 8287, 8788 (Feb. 12, 1993). Joe and his wife's combined annual income of $20,280 placed them slightly above the poverty level under the federal guidelines. Although the fact that Joe's family is not impoverished by federal standards may be one factor, it is not dispositive of whether he is indigent for pauper counsel purposes. Our supreme court has recognized that it is not possible to set specific monetary guidelines to determine indigency. *Moore v. State* (1980), 273 Ind. 3, 401 N.E.2d 676, 678. Indigent does not mean that the defendant has to be totally without means. *Id.* Rather he is indigent if he legitimately lacks financial resources without imposing substantial hardship on himself or his family. *Id.* An indigency determination must be based on several factors so as to thoroughly

examine the defendant's total financial picture as is practical. *Id.,* 401 N.E.2d at 679. The court must balance the defendant's assets against his liabilities and consider the amount of his disposable income or other resources reasonably available to him after the payment of his fixed or certain obligations. *Id.* We note that reliance upon the federal poverty guidelines alone to determine indigency would not satisfy this analysis since the guidelines do not reflect individual circumstances. Thus, we find it appropriate to apply a fact-sensitive approach, as utilized in *Moore,* to civil indigency determinations tempered by the realization that the right at stake in pauper appointment of counsel in criminal cases is greater than that involved in civil appeals. *See Campbell,* at 159.

In *Campbell,* there was no question that Campbell was indigent. *Id.* at 160. He was unemployed due to his physical disability, had no bank account, owned no real estate, and relied upon government assistance. *Id.* The supreme court found the trial court abused its discretion in denying his pauper petition in his civil action. *Id.; see also Sears, Roebuck & Co. v. Charles W. Sears Real Estate,* 865 F.2d 22 (2d Cir.1988) (civil litigant with $20,000 net income was denied appointed counsel for failure to establish indigence).[3]

In the context of criminal cases, a defendant was indigent when he had no property except his clothing, even though his parents had means to assist him but refused. *Hendryx v. State* (1892), 130 Ind. 265, 29 N.E. 1131. In another criminal case, the trial court abused its discretion in denying pauper counsel to an unemployed student attending school on borrowed money. *Graves v. State* (1987), Ind.App., 503 N.E.2d 1258, 1262. On the other hand, a defendant who had $500 in weekly income and $1,300 in savings was not indigent and was not entitled to appointed

---

**2.** Although the parties did not tender these guidelines to the trial court, we may still consider them for guidance. *See In Re Estate of Rhoden* (1968), 143 Ind.App. 537, 241 N.E.2d 800, 801, fn. (reviewing court may take judicial notice of census); *LaPalme v. Romero* (1993), Ind.App., 606 N.E.2d 882, 884 (although not binding upon us, federal authority is useful guide).

**3.** In the federal court system, 28 U.S.C. § 1915 allows a civil litigant to appeal a case without prepayment of court fees and costs if he is indigent.

counsel. *Hardy v. State* (1982), Ind.App., 436 N.E.2d 837, 839.

 Here, the trial court denied Joe's pauper petition without a hearing. Thus, it determined that Joe was not indigent based upon his affidavit.[4] There, he averred that his and his wife's combined weekly gross income totalled $390. After expending $90 for child care and transportation expenses and $80 for child support, he alleged that the remaining $220 weekly income was depleted on rent, utilities, car insurance, and other necessities to maintain his household of six. It appears that Joe's fixed debts were approximately half of his $1,560 gross monthly income. Thus, he had over $850 remaining each month to support his family. Although we acknowledge that this amount must be wisely managed to provide for a family of six, he has not shown that he and his family will suffer substantial hardship if he is held responsible for the costs of his appeal.

Joe's reliance upon *Redmond v. State* (1988), Ind., 518 N.E.2d 1095, is not persuasive. During the ten-month period before Redmond's trial, his biweekly earnings decreased from $450 to $300–$340. *Id.* Redmond was the sole supporter for his wife and two children and paid $200 per month rent. *Id.* Redmond did not own a car or real property. *Id.* The trial court refused to appoint pauper counsel. *Id.* Upon Redmond's appeal of his conviction, our supreme court reversed finding that Redmond was indigent and should have had the benefit of appointed counsel. *Id.* at 1096. We distinguish *Redmond* because 1) Redmond's financial situation was bleaker than Joe's, 2) Redmond was seeking appointed counsel rather than waiver of court fees, and 3) Redmond's right at stake, loss of freedom, was graver than Joe's financial risk.

In sum, the trial court did not abuse its discretion by denying Joe's petition to proceed on appeal as an indigent. Joe is hereby ordered to pay the appellate fees that had been conditionally waived pending this disposition.

Judgment affirmed.

NAJAM and RILEY, JJ., concur.

4. An inadequate inquiry into the defendant's ability to afford counsel will result in a new trial. *See Moore,* 401 N.E.2d at 677 (court abused its discretion in denying pauper counsel when no inquiry was made as to defendant's actual income or assets or the amount of any liabilities). Here, Joe presented sufficient information in his affidavit for the trial court to determine indigency.