722 N.E.2d 349 (2000)
In re The Matter of the PATERNITY OF E.M.P.
Darren Beavers, Appellant-Petitioner,
v.
Eva Eskew, Appellee-Respondent.
No. 45A04-9908-JV-346.
Court of Appeals of Indiana.
January 13, 2000.
*350 George R. Livarchik, Livarchik & Farahmand, Chesterton, Indiana, Attorney for Appellant.
James E. Rice, Rice & Kapitan, Highland, Indiana, Attorney for Appellee.

OPINION
SHARPNACK, Chief Judge
Darren Beavers ("Father") appeals from the trial court's order modifying his child support obligation. Father raises the following issues, which we restate as:
1) whether the trial court erred in finding that Father was voluntarily underemployed and in calculating his child support obligation based upon his potential income;
2) whether the trial court erred in ordering Father to pay Mother's attorney fees; and
3) whether the trial court erred in failing to reduce Father's gross weekly wages by the actual amount of court ordered support for his two subsequent children.
We affirm in part, reverse in part, and remand to the trial court.
The facts most favorable to the judgment follow. On April 20, 1992, E.P. was born out-of-wedlock to Eva Eskew ("Mother"). On January 14, 1994, a paternity order was entered which established that Beavers was the father of E.P. Father was ordered to pay $45.00 per week in child support.
Sometime after E.P.'s birth, Father had two subsequent children with his wife. However, this marriage ended in divorce in 1997. Father's ex-wife was awarded custody of the children, and Father was ordered to pay $165.00 per week in child support.
*351 Then, on June 8, 1998, Mother filed a petition for modification seeking an increase in the amount of support previously ordered for E.P. and requesting attorney fees. At the time Mother filed the petition for modification, Father was employed as a garbage collector. As a garbage collector, Father earned $34,707.78 in gross wages in 1996. In 1997, he earned $36,027.69. Father's earnings again increased in 1998, earning a gross salary of $46,680.00 for the year. However, on June 1, 1999, just eight days before the evidentiary hearing on Mother's petition for modification was held, Father quit his job as a garbage collector and began working for GTE. His rate of pay at the time of the hearing was $12.10 per hour, which equates to $484.00 in gross weekly wages, or $25,168.00 yearly. Father testified that he changed jobs, with a resulting significant decrease in pay, due to his bad knees, health concerns resulting from previous injuries incurred during his employment as a garbage collector, and to receive better benefits. With regard to Mother, it was uncontested that she has two subsequent born children who reside with her and that she has gross weekly wages of $600.00 per week, or $31,200.00 per year.
The trial court found that Father was voluntarily underemployed and therefore based its support order on his 1998 wages. However, because Father has two subsequent children, the trial court reduced the amount of his weekly wages, which the support order was based on, by .903, the appropriate factor established by the Child Support Guidelines for two children. Accordingly, Father was ordered to pay $115.80 per week in child support for E.P. The trial court also ordered Father to pay Mother's attorney fees in the amount of $800.00.
Modification of a child support order requires a showing of "a substantial change in circumstances that makes the terms unreasonable." Ind.Code § 31-14-11-8; see also Ind. Child Support Guideline 4 ("[t]he provisions of a child support order may be modified only if there is a substantial and continuing change of circumstances"). In reviewing a determination of whether child support should be modified, we will reverse the decision only for an abuse of discretion. Elliott v. Elliott, 634 N.E.2d 1345, 1348 (Ind.Ct.App. 1994), reh'g denied. We review the evidence most favorable to the judgment without reweighing the evidence or reassessing the credibility of the witnesses. Id. An abuse of discretion occurs when the decision is clearly against the logic and effect of the facts and circumstances before the court, including any reasonable inferences therefrom. Id.

I.
As his first assignment of error, Father alleges that the trial court erred in finding that he was voluntarily underemployed and in calculating his child support obligation based upon his potential income. In Indiana, when a parent becomes voluntarily unemployed or underemployed, the trial court must calculate support based upon a determination of potential income. Ind. Child Support Guideline 3(A); In re Paternity of Buehler, 576 N.E.2d 1354, 1355 (Ind.Ct.App.1991). The amount of potential income to be used is determined by considering the obligor's potential and probable earnings level based on the obligor's work history, occupational qualifications, prevailing job opportunities, and earnings levels in the community. Id. The purposes behind determining potential income are to "discourage a parent from taking a lower paying job to avoid the payment of significant support" and to "fairly allocate the support obligation when one parent remarries, and because of the income of the new spouse, chooses not to be employed." Child Supp.G. 3, cmt. 2c; see also, Buehler, 576 N.E.2d at 1355-1356. However, child support orders cannot be used to force parents to work to their full economic potential or make their career decisions based strictly upon the *352 size of potential paychecks. Buehler, 576 N.E.2d at 1356.
Father argues that because he has "legitimate reasons for changing to a lower paying job" and because "there is no evidence he changed jobs to evade a child support obligation," the trial court erred in finding him underemployed. Appellant's Brief, p. 22. Citing numerous decisions from this court, Father asserts that "[n]o known Indiana decision has found a parent is voluntarily unemployed or underemployed where the evidence shows some other legitimate reason to leave employment or take a lower paying position." Appellant's Brief, p. 14; Reply Brief, p. 1. Although the majority of the cases cited by Father are factually distinguishable, we do find support for Father's position in Elliott and Ullery. Elliott v. Elliott, 634 N.E.2d 1345 (Ind.Ct.App.1994), reh'g denied; Ullery v. Ullery, 605 N.E.2d 214 (Ind.Ct.App. 1992), trans. denied.
In Elliott, the father was fired from his job as a truck driver without good cause. Elliott, 634 N.E.2d at 1347. After a successful hearing seeking unemployment benefits, the father did not seek reemployment with his original employer because his former manager was no longer friendly with him. Id. at 1349. After four months of unemployment, he found another job making $80.00 less per week. Id. In addressing the mother's contention that the father could be earning more than he was currently, we noted that not only did the mother not present evidence that such higher earning positions were available, but that a parent may have legitimate reasons to leave his employment or to take a lower paying job. Id. Although we affirmed the child support order on other grounds, we held that it would be erroneous to find the father to be voluntarily underemployed. Id.
In Ullery, the most factually analogous case that Father cites, the father quit his job after the mother filed a petition to modify child support, assertedly because his employer was not treating him fairly. Ullery, 605 N.E.2d at 215. He denied that he quit as a result of the filing of the petition or that he had chosen not to be gainfully employed and not to pay his support. Id. The trial court denied the mother's petition to increase child support, noting that the father was unemployed. Id. On appeal, we held that the record supported the trial court's determination that the father was not voluntarily underemployed or that his current decline in income was purposely brought about to reduce his support payments, and therefore, we could not conclude that the trial court's refusal to increase his payments was an abuse of discretion. Id. at 216.
Here, Father testified that he had been pursuing this job change for three years. As a garbage collector, Father lifted twenty to twenty-four tons of garbage for six to seven and a half hours a day. Being tired after work and wanting only to go to sleep, Father testified that he did not want this to continue for the next forty years. Additionally, Father testified that he had bad knees, as well as other health concerns resulting from previous injuries incurred during his employment as a garbage collector. Father also indicated that his new job had better benefits and that he would gradually make more money the longer he was on the job. All of these facts, taken together, indicate that Father's decline in income was not purposely brought about to reduce his support payments. See id. at 215. Further, it appears that Father has legitimate reasons for quitting his job and taking a reduction in pay. See Elliott, 634 N.E.2d at 1347. Keeping in mind that child support orders cannot be used to force parents to work to their full economic potential or make their career decisions based strictly upon the size of potential paychecks, we hold that there was no basis for a determination that Father was voluntarily underemployed for the purpose of determining his child support obligation. See Buehler, 576 N.E.2d at 1356.

*353 II.
Father next contends that the trial court erred in ordering him to pay Mother's attorney fees. The trial court has broad discretion in assessing attorney fees, and we review an award of attorney fees for an abuse of discretion. Collier v. Collier, 696 N.E.2d 47, 53 (Ind.Ct.App. 1998), rev'd in part on other grounds, 702 N.E.2d 351 (Ind.1998). Accordingly, reversal is warranted only when the trial court's award is clearly against the logic and effect of the facts and circumstances before the court. Id. In assessing attorney's fees, the trial court may consider factors such as the resources of the parties, their relative earning ability, and the ability to engage in gainful employment. Id. However, the trial court is not required to give the reasons for its determination. Id.
Disregarding the erroneous imputation of potential income to Father, the record here shows that Mother actually earns slightly more money than Father does. Given the closeness of Father's and Mother's current incomes and respective earning abilities, it was an abuse of discretion to order Father to pay Mother's attorney fees. See In re Paternity of A.J.R., 702 N.E.2d 355, 364 (Ind.Ct.App.1998) (holding that the trial court abused its discretion in ordering Father to pay Mother's attorney fees where parties' current income was nearly identical and Father had two subsequent children to support).

III.
Finally, Father argues that the trial court erred in failing to reduce his gross weekly wages by the actual amount of court ordered support for his two subsequent children. The Indiana Child Support Guidelines provide that the trial court should make an adjustment, using the appropriate percentage factor, to the weekly gross income of parents who have children living in their households who were born subsequent to the prior support order. Child Supp.G. 3(A)(4) and cmt. 3. After determining the weekly gross income, the trial court is to make certain specified reductions in order to arrive at the weekly adjusted income. Child Supp.G. 3(C). The weekly adjusted income is the amount on which the child support is based. Id. These reductions include the amount of court ordered child support for children born prior to the child for whom the current support order is being established. Child Supp.G. 3(C)(1). This emphasis on prior born children means that "no deduction is allowed for the support ordered as a result of the second or subsequent marriage" when a petition to modify the support of a child from a prior marriage is filed with the trial court. Child Supp.G. 3(C), cmt. 1. Likewise, "[i]f a child is born out of wedlock before the children of the marriage, no deduction for the children of the marriage is allowed" when establishing or modifying the support of the child born out of wedlock. Id.
Here, Father's two subsequent born children do not reside with him; they live with his ex-wife. Therefore, according to the Child Support Guidelines, Father was not entitled to an adjustment of his weekly gross income. See Child Supp.G. 3(A)(4). Nor was Father entitled to a deduction for his two subsequent born children in arriving at his weekly adjusted income because E.P. was a child born out of wedlock before the marriage. See Child Supp.G. 3, cmt. 1. Nevertheless, the trial court chose to reduce Father's weekly gross income by.903, the appropriate factor for two children.
Despite being giving a reduction that he was not entitled to according to the Child Support Guidelines, Father complains because the trial court did not reduce his weekly gross income by $165.00, the actual amount that he had been ordered to pay for the support of his two subsequent children. He asks this court to address the "logical inconsistency in the way the child support guidelines treat subsequent born children when the first child *354 seeks a support modification." Appellant's Brief, p. 25. Father points out that, according to the Guidelines, he would get a deduction, determined by a percentage factor, if his subsequent children lived in his home but that if those same subsequent born children do not reside in his home then he is not entitled to a deduction. He argues that:
"[s]ince dad gets no percentage factor or other deduction when his subsequent children leave his household as part of a divorce, his gross weekly wage is higher. Thus, the first child receives more support than it would if dad's subsequent children reside in his household. However, dad still has a duty to support subsequent children whether they reside in or out of his home."
Appellant's Brief, pp. 25-26. Father, citing to Haverstock, contends that this "inconsistent treatment" is contrary to Indiana case law. Haverstock v. Haverstock, 599 N.E.2d 617, 619-620 (Ind.Ct. App.1992) (stating that "[p]arents have the same duty to support later children as they do earlier children, and this Court will not prefer first children over subsequent children for purposes of child support"); Appellant's Brief, p. 6. However, we need not address this purported inconsistency in the Child Support Guidelines regarding subsequent children who do or do not live with the parent because Father did in fact receive a reduction for his subsequent children, even though they do not live with him.[1]
Father goes on to argue that when the first born child seeks a modification of the prior support order, the actual amount of the court ordered support for his subsequent children who do not reside with him should be deducted from his gross weekly income when determining the income upon which to base the support order for the first born child. In allowing Father a reduction for his subsequent children, based on the percentage factor rather than the actual amount of support ordered for those children, the trial court stated:
"The commentary talks about living with, but, I think the overriding policy is that there should be a recognition. But it should not be used to diminish the ability of the first child to live on a level that it would have lived on if the parties had lived together. So, ... I'm finding my interpretation of the Guidelines. That the clear intent was that there should be some recognition of other children that may be born after a first child, but also, that ... subsequent children should not bethe obligation should not be allowed to water the ability of the first child to live as it would have lived, but for the fact there werefather kept procreating, the mother kept procreating, not [sic] custodial parents kept procreating. And I think the logic is clear there should be a credit.... I do not think it is appropriate to subtract the full support order out. Otherwise, every time you make a child, you come to Court and you lower her child support because you decide to keep making children. Pretty soon she will be at the level of zero."
Record, pp. 163-164. We find this reasoning to be sound. Further, it is consistent with the commentary in the Child Support Guidelines which notes that "[e]stablishment of a support order in a second marriage should not constitute a change in circumstance in the first marriage which would lead to modification of the support order from the prior marriage." Child *355 Supp.G. 3(C), cmt. 1; see also Ind.Code § 31-16-6-1 (requiring trial courts to consider the standard of living the child would have enjoyed if the family had remained intact when fashioning child support orders). Accordingly, we find no error with the trial court's refusal to allow Father a deduction for the full amount of child support that he is required to pay for his two subsequent born children.
For the foregoing reasons, we reverse the trial court finding's that Father was voluntarily underemployed and the order to pay Mother's attorney fees. However, we affirm the trial court's refusal to allow Father a deduction for the full amount of child support that he is required to pay for his two subsequent born children. We remand for further proceedings consistent with this opinion.
Affirmed in part, reversed in part, and remanded.
RILEY, J., and KIRSCH, J. concur.
NOTES
[1] Mother does not raise as an error the granting of this reduction to Father for his two subsequent born children who do not reside with him. Instead, she contends only that Father is not entitled to a dollar for dollar reduction for the amount of child support he actually pays for his subsequent born children and that the trial court's method of reducing Father's gross weekly wages by the percentage factor should be affirmed. Therefore, we need not address the propriety of the trial court allowing Father this reduction that he was not entitled to according to the Child Support Guidelines. See Child Supp.G. 3(A)(4); Child Supp.G. 3, cmt. 1.