# MEMORANDUM DECISION

Pursuant to Ind. Appellate Rule 65(D), this Memorandum Decision shall not be regarded as precedent or cited before any court except for the purpose of establishing the defense of res judicata, collateral estoppel, or the law of the case.



FILED

May 20 2016, 9:38 am

CLERK
Indiana Supreme Court
Court of Appeals
and Tax Court

ATTORNEYS FOR APPELLANT

Kristi L. Fox
Steven A. Gustafson
Fox Law Offices, LLC
New Albany, Indiana

ATTORNEY FOR APPELLEE

Jeffrey K. Branstetter
Blanton, Branstetter & Pierce, LLC
Jeffersonville, Indiana

# IN THE
# COURT OF APPEALS OF INDIANA

| | |
|---|---|
| Carla S. Love,<br>*Appellant-Petitioner,*<br><br>v.<br><br>Mauricio Bellido,<br>*Appellee-Respondent.* | May 20, 2016<br><br>Court of Appeals Case No.<br>22A01-1510-JP-1683<br><br>Appeal from the Floyd Circuit Court<br><br>The Honorable J. Terrence Cody, Judge<br>The Honorable Julie F. Flanigan, Magistrate<br><br>Trial Court Cause No.<br>22C01-1109-JP-116 |

**Bradford, Judge.**

## Case Summary

[1] Appellant-Petitioner Carla Love ("Mother") filed a petition to modify Appellee-Respondent Mauricio Bellido's ("Father") child support obligation. The trial court denied Mother's petition. Mother argues that the trial court (1) erred by considering her investment accounts as income, (2) abused its discretion in denying her petition for modification, and (3) erred by not ordering Father to pay a portion of the child's uninsured medical expenses. We affirm the trial court's decision to include Mother's investment accounts as income and remand with instructions that the trial court (1) make additional findings or complete a child support worksheet and (2) determine what amount of uninsured medical expenses Father is obligated to pay.

## Facts and Procedural History

[2] Mother and Father have one child together, born March 14, 2006. Mother initiated a paternity action on September 20, 2011. On January 10, 2013, the trial court approved an agreed order which provided that Father would pay Mother $108 per week in child support. At the time of the 2013 order, both Mother and Father lived in the southern Indiana area. In March of 2014, Father accepted a higher-paying job in Washington, D.C.

[3] On September 25, 2014, Mother filed a petition to modify Father's child support obligation. On July 27, 2015, the trial court held a hearing on Mother's petition. At the hearing, Mother was questioned about the nature of investment

income in excess of $80,000[1] which she listed on her 2014 tax return but did not include in the calculation of her weekly gross income on her child support obligation worksheet. Mother testified that her family set up an investment account for her retirement which was managed by a broker and the proceeds automatically reinvested. Mother did not know whether the investment account was an IRA, 401k, or some other type of account. Mother testified that she does not draw from her account for day-to-day expenses and withdrew $18,000 in 2014 to pay for the child's medical expenses. The exact nature of the investment account was unclear from Mother's testimony, including whether or not Mother could access account funds without permission.

[4] On July 28, 2015, the magistrate denied Mother's petition, finding that Mother "fail[ed] to present the complete nature and scope of income or potential income available to her." Appellant's App. p. 10. Mother filed a petition objecting to the magistrate's ruling and seeking a final appealable order on her petition for modification. The trial court judge held a hearing on Mother's petition for a final order and affirmed the magistrate's ruling.

# Discussion and Decision

---

[1] On Mother's 2014 tax return, she listed the following as income: $17,680 in wages, $2,299 in taxable interest, $14,985 in dividends, and $64,976 in capital gains. (Ex. 2) Mother's adjusted gross income was $97,147. (id)

On appeal, Mother argues that the trial court (1) erred by considering her investment accounts to be weekly gross income, (2) abused its discretion in denying her petition for modification, and (3) erred by not ordering Father to pay a portion of the child's uninsured medical expenses.

## Standard of Review

> In reviewing the trial court's decision regarding the modification of child support, we reverse only for an abuse of discretion. *In re Marriage of Kraft*, 868 N.E.2d 1181, 1185 (Ind. Ct. App. 2007). An abuse of discretion occurs when the decision is clearly against the logic and effect of the facts and circumstances before the court, including any reasonable inferences therefrom. *In re Paternity of E.M.P.*, 722 N.E.2d 349, 351 (Ind. Ct. App. 2000). Whether the standard of review is phrased as "abuse of discretion" or "clear error," the importance of first-person observation and preventing disruption to the family setting justifies deference to the trial court. *MacLafferty v. MacLafferty*, 829 N.E.2d 938, 940-41 (Ind. 2005).

*Holtzleiter v. Holtzleiter*, 944 N.E.2d 502, 505 (Ind. Ct. App. 2011). Here, the trial court issued a general judgment, which we will affirm if sustainable on any legal theory consistent with the evidence. *Id.* "[W]e neither reweigh the evidence nor judge the credibility of witnesses and consider only the evidence most favorable to the judgment and all reasonable inferences drawn therefrom. *Id.*

# I. Mother's Investment Income

Mother argues that the trial court erred by imputing her retirement fund gains as income. Mother cites to *Carmichael v. Siegel*, in which we held that courts may not impute IRA earnings as income for the purpose of a parent's child support obligation where there is no indication that previous withdrawals have been made to fund the parent's living expenses. 754 N.E.2d 619, 629 (Ind. Ct. App. 2001); *see also* Ind. Child Support Guideline 3A, cmty. 2(e) ("The annual return of an IRA, 401(K) or other retirement plan that is automatically reinvested does not constitute income" unless "withdrawals…have been made to fund the parent's lifestyle choices or living expenses."). In reaching this result, we reasoned that "actual weekly gross income," as contemplated by the Indiana Child Support Guidelines ("the Guidelines"), only includes earnings that are presently available to the parent "for his or her immediate use." *Id*. at 628.

In its order denying Mother's petition, the trial court found that Mother "fail[ed] to present the complete nature and scope of income or potential income available to her." Appellant's App. p. 10. When questioned by the trial court at the modification hearing, Mother gave the following testimony regarding her investment account:

> Court: Is this money in an account somewhere that you hope to use someday in retirement and it's sold by a broker?
>
> Mother: What my father set up for me.

Court: Okay. It's separate it's not in – I know what you're saying. It's not in a savings account but it's in a brokerage account?

Mother: Yes.

Court: And you – if you absolutely had to have it, um, you could get to it, is that correct?

Mother: Yes, that's correct.

Court: Okay. What [Father's counsel] is asking you is, is it held in a 401k or an IRA or some other vehicle that would not allow you to get to it before a certain age?

Mother: Well, no, I don't believe so your honor.

…

Court: [I]n order to determine what it is, we need to know what kind of account it is. So to your knowledge it is not in an IRA or a 401k or any of those tax vehicles?

Mother: I don't know your honor.

Tr. pp. 25-26.

[9]     As evidenced by Mother's admission, it is unclear what type of investment account Mother has. Mother made a substantial withdrawal in 2014 but it is unclear if that was permitted due to a medically-related hardship, or if Mother is free to withdraw from her account and is either unaware of this fact or simply chooses not to make withdrawals. In any case, the trial court made a factual determination that Mother "fail[ed] to present the complete nature and scope of income or potential income available to her." Appellant's App. p. 10. The trial court was thorough in its attempt to determine the nature of Mother's investment account and we are in no better a position to make such a determination. Accordingly, Mother's argument that we reverse the trial

court's factual finding amounts to an invitation to reweigh the evidence, which we cannot do. *Carmichael*, 754 N.E.2d at 634.

[10] Mother argues that Father waived the imputed-income argument by failing to submit a child support worksheet. We must disagree. We are aware of no authority supporting Mother's argument that the only manner in which to challenge another party's income calculation is by filing a child support worksheet. The issue surrounding Mother's investment income was repeatedly addressed during the modification hearing. We see no reason why subsequently declining to file a child support worksheet would waive an already-raised argument.

## II. Modification of Child Support

[11] Child support orders may only be modified

> (1) upon a showing of changed circumstances so substantial and continuing as to make the terms unreasonable; or
>
> (2) upon a showing that:
>
>> (A) a party has been ordered to pay an amount in child support that differs by more than twenty percent (20%) from the amount that would be ordered by applying the child support guidelines; and
>>
>> (B) the order requested to be modified or revoked was issued at least twelve (12) months before the petition requesting modification was filed.

Ind. Code § 31-16-8-1. Mother argues that even including her investment income in the child support calculation, the increase in Father's income still

justifies a modification in his child support obligation because it would yield a change of greater than twenty percent.

[12]  Once the trial court decided not to exclude Mother's investment income from the worksheet calculation, it suggested that it would craft a new worksheet using her total income. Mother submitted her 2014 tax return as evidence which showed that her adjusted gross income was $97,147. According to Mother's calculation, using $97,147 for her income along with Father's new income yields a weekly child support obligation of $157 for Father, which is approximately a 45% increase from his current obligation of $108. In making this calculation, Mother makes three significant assumptions: (1) Father is not entitled to a parenting time credit, *i.e.* the child would stay with him less than fifty-two days a year, (2) Father had no weekly work-related childcare expenses, and (3) Father's bonus should be included in his weekly income. Child Supp. G. 6; Child Supp. Worksheet. However, each of these facts was disputed at the modification hearing.

[13]  Regarding work-related childcare expenses, Father testified that he incurred expenses in the amount of $270 a week for daycare. With regard to Father's income, Mother calculated that Father's weekly gross income is $1864. In reaching this figure, Mother included a bonus Father received from his employer that amounted to $158 a week. However, Father testified that this

was a one-time bonus, as opposed to a recurring annual bonus, and so should not be considered in calculating his gross weekly income.[2]

[14] As for parenting time, there was evidence that Father would exercise time pursuant to the Indiana Parenting Time Guidelines.

> Court: [Mother's counsel] is correct almost in her numbers because I come up with 7 times 7 is 49 days in the summer and 7 [days] of winter is 56 and then 9 days at spring break which would be 65 days is what I come up with under the guidelines….It's just commentary but that's all I really have unless there's been a real pattern.
>
> Counsel for Mother: I mean, I want to leave it open – I agree with you using that as a basis but I do want to leave it open to rebuttal on what is actually been exercised.

Tr. p. 35. When Mother was later asked how much parenting time she anticipated Father to exercise in the future, Mother was inconsistent, initially saying, "I believe we would go by the Indiana State Guidelines," tr. p. 39, but later predicting that Father would not "have more than 51 overnights," in a year. Tr. p. 54. As the trial court noted, the Indiana Parenting Time Guidelines recommend that Father, as the non-custodial parent, is entitled to take the child for a total of approximately sixty-five days throughout the year, which would entitle Father to a parenting time credit that would reduce his support obligation. Ind. Parenting Time Guidelines Section III, cmty. (C).

---

[2] Aside from his bonus, Father did not dispute Mother's calculation of his weekly gross income.

[15] The trial court did not complete a worksheet or make findings on the aforementioned contested factual issues. Additionally, Father did not file a worksheet which would provide us with guidance on what numbers the trial court could have used for these variables. We note that this court "[does] not condone [a] trial court's decision to proceed without verified child support worksheets," and "'we strongly discourage such a practice and urge trial courts in the exercise of their discretion to require verified child support worksheets in every case. Failure to do so frustrates not only appellate review but also the goals of the child support guidelines.'" *Hedrick v. Gilbert*, 17 N.E.3d 321, 327 (Ind. Ct. App. 2014) (quoting *Butterfield v. Constantine*, 864 N.E.2d 414, 417 (Ind. Ct. App. 2007)).

[16] Where the failure to complete a worksheet prevents this court from determining whether the trial court complied with the Guidelines, we will remand for clarification.

> While Child Supp. G. 3(B)(1) does state that the parties "shall" file a worksheet, it does not state the consequence of failing to file one. The dissent assumes such a failure prevents a trial court from entering a support award. A more logical assumption is that it prevents the non-complying party from challenging the income figures arrived at by the trial court.
>
> However, because the trial court did not award the amount calculated by Young, and made neither findings concerning the income it attributed to each party nor completed its own child support worksheet, we are unable to determine whether the court in fact complied with the child support guidelines. Thus, we must remand to the trial court for clarification of its award. If the trial court complied with the guidelines, it should enter findings or

> complete a child support worksheet, detailing how it arrived at the $110.00 amount. The findings or worksheet should contain the figures assigned for income, child care, health insurance premiums and credit for Dye's support obligations to his other children as well as the percentage of support assigned to each parent. If the court deviated from the guidelines, it should enter findings or provide a worksheet demonstrating its calculations, as well as a written finding setting forth the factual basis for the deviation. Child Supp. G. 3(F)(2).

*Dye v. Young*, 655 N.E.2d 549, 550-51 (Ind. Ct. App. 1995). Here, as in *Dye*, the trial court neither completed its own child support worksheet nor made findings concerning Father's income, parenting time credit, child care costs, or the percentage of support assigned to each parent. As such, we are unable to determine whether the trial court complied with the Guidelines.

[17] We note that while there may be evidence in the record which supports the denial of modification, we will not pick and choose to credit only that evidence when Father did not complete a worksheet and there is little or no indication of what evidence the trial court found credible or relied upon in reaching its decision. To do so would discourage the use of child support worksheets, incentivize trial courts to issue conclusory judgments, and ultimately vitiate this court's ability to independently and accurately review those judgments. While trial courts are not always required to explain their reasoning, doing so is particularly important where, as here, there is a statutory formula which we can easily review. Therefore, we remand with instructions that the trial court make additional findings or complete a child support worksheet and, if applicable, explain why any deviations from the Guidelines are justified. *See Beardsley v.*

*Heazlitt*, 654 N.E.2d 1178, 1182 (Ind. Ct. App. 1995) ("[A] trial court is required to articulate its reasons when its child support order deviates from the result which would have been reached under the guidelines.").

# III. Medical Expenses

[18] Mother argues that she is entitled to reimbursement by Father for the child's uninsured medical expenses in 2014 and that the trial court erred in failing to order such reimbursement. The trial court made no mention of medical expense obligation in its order. The Guidelines provide as follows with regard to uninsured medical expenses:

> Ordinary uninsured health care expenses are paid by the parent who is assigned to pay the controlled expenses (the parent for whom the parenting time credit is not calculated) up to six percent (6%) of the basic child support obligation (Line 4 of the Child Support Obligation Worksheet). Extraordinary health care expenses are those uninsured expenses which are in excess of six percent (6%) of the basic obligation, and would include uninsured expenses for chronic or long term conditions of a child. Calculation of the apportionment of the health care expense obligation is a matter separate from the determination of the weekly child support obligation. These calculations shall be inserted in the space provided on the Worksheet.

Child Supp. G. 7.

[19] Initially, we note that Father made no arguments at the modification hearing as to why he would not be responsible for some portion of the child's uninsured medical expenses, nor did he contest the validity or amount of any of the

expenses submitted by Mother. On appeal, Father argues only that Mother's calculation of his medical expense obligation is based on information outside the record on appeal. We disagree. At the modification hearing, Mother submitted records and receipts detailing the child's 2014 uninsured medical expenses which amounted to $1,445.11. It appears that these expenses are far in excess of six percent of Father's current yearly obligation and would entitle Mother to reimbursement of some portion thereof.[3] Accordingly, we remand with instructions that the trial court determine what amount of uninsured medical expenses Father is obligated to reimburse Mother.

[20] The judgment of the trial court is affirmed in part and remanded with instructions.

Bailey, J., and Altice, J., concur.

---

[3] While we cannot make exact determinations with the evidence available to us on appeal, we estimate that Father's current yearly basic obligation is approximately $6,000, six percent of which is $360.