In re the Marriage of Steven A. GILPIN, Appellant–Petitioner,

v.

Brenda J. GILPIN, Appellee–Respondent.

No. 02A03–9510–CV–346.

Court of Appeals of Indiana.

April 30, 1996.

Stanley A. Levine, Fort Wayne, for appellant.

Suzanne M. Hampton, Haller & Colvin, P.C., Fort Wayne, for appellee.

## OPINION

HOFFMAN, Judge.

Appellant-petitioner Steven A. Gilpin appeals from an order modifying a support order entered following his dissolution of marriage to Brenda J. Gilpin, appellee-respondent. The facts relevant to appeal are summarized below.

Steven and Brenda were married in 1973 and divorced in 1993. Four children were born to the marriage: Heather, Brett, Kyle, and Luke. Brenda and Steven share joint custody of the children. However, according to a Property Settlement Agreement (Agreement) approved by the trial court, Heather was to have her primary residence in her mother's home. The boys were to live with Steven. Also pursuant to the Agreement, both parties were to provide support for all four children.

At the time of the divorce, Brenda was working at DMR Financial Services (DMR), as a loan originating officer. Brenda was earning an average income of $970.00 per week. Steven was earning approximately $845.00 per week. Thus, she was to pay $115.00 per month in child support to Steven as the net difference between the parties' respective obligations.

As a loan originating officer, Brenda's income is based on commissions received on the loans she issues. Thus, when the interest rate increases, the amount of loans she issues and her resulting income decreases. Her unstable income and its impact on child support was addressed by the Agreement which specifically provided:

> Due to periodic large fluctuations in [Brenda's] income, changes in support will be negotiated annually first between the parties and if said negotiation does not produce an agreement, the matter of any modification of support shall be submitted to the Court.

Due to fluctuations in her income, in 1994, Brenda attempted to modify her support obligation to Steven. After failing to arrive at an agreement with him personally, she filed a petition seeking modification of support with the trial court in December 1994. Following a hearing on the petition, the trial court granted Brenda's petition and ordered that Steven pay $35.00 a week to her for Heather's support. This appeal ensued.

On appeal, Steven raises two issues which we restate as:

(1) whether the trial court erred in failing to impute income to Brenda based on her subsequent spouse's contribution to her monthly expenses; and

(2) whether the trial court erred in failing to impute potential income to Brenda based on her voluntary underemployment.

■ Steven argues the trial court erred in granting Brenda's petition. Specifically, he contends the trial court erroneously failed to impute income to Brenda for income earned by her subsequent spouse and her alleged voluntary underemployment. On appellate review of a modification of child support, the trial court's judgment will be affirmed unless clearly erroneous. *Garrod v. Garrod*, 655 N.E.2d 336, 337 (Ind.1995). That is, a child support order will be affirmed unless it is clearly against the logic and effect of the facts and circumstances before the trial court. *Matter of Paternity of Humphrey*, 583 N.E.2d 133, 134 (Ind. 1991).

The commentary to the Indiana Child Support Guidelines provides, in pertinent part: "While it may be inappropriate to include as gross income occasional gifts received, regular and continuing payments made by a ... subsequent spouse ... that reduce the parent's costs ... should be considered in arriving at gross income." Ind. Child Support Guideline 3(A)(2) Commentary 2(e). The evidence discloses that Brenda's monthly expenses are approximately $2,400.00. Of this amount, her subsequent spouse contributes one-half, or roughly $1,200.00. Testimony also disclosed that included in this amount is Brenda's subsequent spouse's contribution towards mortgage payments on a house which she owned prior to her remarriage. The trial court improperly failed to consider this evidence in its calculation of Brenda's income for purposes of her petition.

■ Next, Steven insists Brenda is voluntarily underemployed. At the hearing, Brenda stated her recent decrease in income from DMR is causally related to market factors, specifically increasing interest rates. Brenda's income had dropped from $970.00 at the time of the divorce to $287.00 per week at the date of the hearing. As a result, Steven argues, she should be found to be voluntarily underemployed due to her failure to terminate her employment with DMR and to seek higher paying employment elsewhere. To support his position, he notes two other DMR loan originators in similar circumstances to Brenda's had left DMR due to drastic decreases in their income levels.

■ The Indiana Child Support Guidelines also specifically acknowledge parents often take drastic measures, such as becoming unemployed or underemployed, merely to liberate themselves from their child support obligations. The guidelines attempt to

discourage such efforts by giving the trial court wide discretion to impute potential income to a parent when the trial court is convinced the parent's unemployment or underemployment has been contrived for the sole purpose of evading support obligations. *See* Ind. Child Support Guideline 3(A)(3); *Matter of Paternity of Buehler*, 576 N.E.2d 1354, 1355 (Ind.Ct.App.1991). To determine whether potential income should be imputed, however, the trial court should review the obligor's work history, occupational qualifications, prevailing job opportunities, and earning levels in the community. *Castaneda v. Castaneda*, 615 N.E.2d 467, 471 (Ind.Ct.App. 1993).

Brenda obtained her employment at DMR the year prior to her divorce from Steven. Before that she had worked mainly in the home. Brenda is a high school graduate with only one year of college and few additional marketable skills. Her social security earning records indicate the period prior to her divorce was the only time in her work history her income was at such a high level.

Brenda testified that due to interest rate market forces there has been an industry wide decrease in incomes for those working in the business of mortgage financing. Brenda's supervisor, Diane Pierce, agreed that Brenda's current lower income is not her fault but is instead due solely to such market forces. Pierce further stated that Brenda is currently one of the top producers in the company.

The evidence also discloses that when her income began to fall, Brenda had investigated earning levels of similar positions. However, she found her salary would be near to that of her present employment if she left DMR for a comparable position elsewhere. Moreover, by providing for an annual review of the parties' respective earnings, the Agreement itself foresaw the unstable nature of Brenda's employment. Inasmuch as the market factors which have caused Brenda's decrease in income cannot be reasonably attributed to her, she is currently employed in a position in line with her work history, education, qualifications, opportunities, and skills, and is earning income compatible with the earning levels of her business community; the trial court did not err in failing to impute potential income to her. The cause is remanded to the trial court to take action consistent with this opinion.

Reversed and remanded with instructions.

STATON and ROBERTSON, JJ., concur.