**David GARROD, Appellant–Respondent,**

v.

**Susan GARROD, Appellee–Petitioner.**

No. 79A05–9106–CV–201.

Court of Appeals of Indiana, Fifth District.

April 15, 1992.

Rehearing Denied June 3, 1992.

Loretta H. Rush, Jerome L. Withered, Reiling Teder And Withered, Lafayette, for appellant-respondent.

Margret G. Robb, Bartlett Robb & Sabol, Lafayette, for appellee-petitioner.

BARTEAU, Judge.

David Garrod appeals the trial court's denial of his petition for modification of child support. We have consolidated and restated his issues on appeal as:

1. Whether the trial court's conclusion that a substantial and continuing change in circumstances does not exist is supported by the trial court's findings of fact;

2. Whether the trial court abused its discretion in failing to modify the support order which allocates 100% of all medical expenses and 50% of all educational expenses to the husband; and

3. Whether the Indiana Child Support Guidelines violate the due process and the equal protection clauses of the United States Constitution.

We affirm in part, reverse in part and remand.

## FACTS

David and Susan Garrod's marriage was dissolved on November 7, 1988. Susan was awarded custody of their only child, John, born December 31, 1984. David was awarded visitation at reasonable times and places, including Tuesdays and Thursdays after school until 7:00 p.m.; Friday nights until 10:00 a.m. Saturday; and Saturday nights until 8:00 p.m. Sunday. The order also provided that David and Susan would alternate Christmas and Spring vacations with John and that each would have John on their respective birthday. In the summer, both David and Susan would have uninterrupted physical custody of John for a three week period. David was ordered to pay child support in the amount of $125 per week and to pay all reasonable and necessary uninsured medical expenses for John. Susan was ordered to maintain health insurance for John, and David and Susan were ordered to equally share education expenses for John.

On August 16, 1990, the trial court approved a stipulation and agreed entry, whereby David and Susan agreed to reverse their Spring and Christmas vacation visitation schedules and to grant to the other parent the option to have John during times when John would otherwise routinely be with a babysitter. David filed his petition for modification of support on September 27, 1990, alleging a substantial and continuing change in circumstances making the support order unreasonable in that his income had substantially decreased since the November 7, 1988 order, and that the current order exceeded by more than 20% the amount that would be ordered by applying the child support guidelines.

At the time of the November 7, 1988 judgment ordering David to pay $125 in child support, David's income, adjusted for calculation of child support, was approximately $40,000, of which $14,000 was earned as a part-time teacher at Purdue University. The balance of the income represented earnings on rental properties owned by David and Susan. The 1988 dissolution order divided the rental properties between Susan and David. In 1989, David's income, again adjusted for calculation of child support, fell to $14,000. David estimated that his gross income for 1990 would be $19,000.

At the end of 1990, David was notified that his teaching position at Purdue was being terminated due to a lack of funds. The University Department was searching for funds in order to resume David's position, however, there was no certainty as to when or if David would be rehired. Thus, as of 1991, David lost income in the amount of $14,000 per year. He testified that the only position he could get at Purdue was

grading papers for $4.50 an hour. However, he did not want to look for a job outside the Lafayette area because he wanted to stay near his son and because he had his properties to manage. He was planning to concentrate more on the properties in order to increase the rental income. Susan testified over objection that if David were to sell the rental properties and invest the money it would earn between $60,000 to $80,000 annually.

While David's income declined, Susan's increased—from about $34,000 annually at the time of dissolution to a little over $40,000 at the time of the modification hearing. Additionally, the evidence showed that while the custody and visitation order had not changed except as noted above, John in fact spends over 40% of his nights with his father. David also has the expense of keeping a full set of clothing and toys for John at his house because John spends so much time there. Based on the expense of such extensive visitation and his decline in income, David petitioned for a modification of child support. The trial court denied the petition.

## STANDARD OF REVIEW

 David requested the trial court to make findings of fact and conclusions of law and the trial court did so. When we review such a case, we will not set aside the judgment unless it is clearly erroneous. A judgment is clearly erroneous when the evidence does not support the findings of fact or when the findings of fact do not support the conclusions. In determining whether the findings and judgment are clearly erroneous, we will neither reweigh the evidence nor judge witness credibility, but we will consider only the evidence and reasonable inferences therefrom which support the judgment. *DeHaan v. DeHaan* (1991), Ind.App., 572 N.E.2d 1315, 1320, *trans. denied.*

## CHANGE IN CIRCUMSTANCES

David first argues that the trial court erred in finding that he had not proven a continuing and substantial change in circumstances warranting a modification.

The trial court made the following findings relevant to this appeal:

4. The father has been employed at Purdue University in the electrical engineering department at an annual salary of $14,300, which employment has now been terminated, but which termination is temporary;

\* \* \* \* \* \*

6. The mother is employed as an Assistant Professor of Electrical Engineering Technology at Purdue University, and her income from said employment in 1990 was $38,480, and her 1990–1991 salary is $40,100;

\* \* \* \* \* \*

8. The mother sold certain real properties awarded to her in the dissolution decree and she earns approximately $5,500 from the investment of the monies received from said sales;

\* \* \* \* \* \*

10. The father was also awarded certain real properties in the dissolution decree, which properties are rental properties, some of which father has sold, some of which he still owns, and from the sale of some, he has purchased additional rental properties;

11. The father has potential income from said rental properties in the amount of $60,000 to $80,000 annually;

12. The father has failed to prove a substantial and continuing change of conditions sufficient to modify the support provisions herein;

13. Father has failed to prove that he incurs significantly greater expenses due to his extensive visitation with his minor son than those expenses incurred by other non-custodial parents exercising visitation;

\* \* \* \* \* \*

David specifically takes issue with the trial court's findings numbered 11 through 13 and argues that the evidence does not support the trial court's findings. As to findings 11 and 12, Susan argues that the evidence supports the trial court's apparent finding that David was underemployed and

that his potential income was in the range of $60,000 to $80,000.

Initially, we note that the trial court did not make a determination as to the presumptive child support amount under the guidelines based on the parties' current situations. Thus, we do not know if the current order of $125 per week is the presumptively correct amount David should be paying. This hampers our review because David petitioned for modification under the guidelines and many of David's arguments urge for a deviation from the guideline amount. Having said that, we turn to the issues at hand.

■ Where a parent becomes voluntarily unemployed or underemployed, the trial court must calculate support based upon a determination of potential income. Ind. Support Guideline 3(A)(3); *Matter of Paternity of Buehler* (1991), Ind.App., 576 N.E.2d 1354. The purpose for determining potential income is to discourage a parent from taking a lower paying job to avoid the payment of significant support; and to fairly allocate the support obligation when one parent remarries and, because of the income of the new spouse, chooses not to be employed. *Buehler, supra.* As Judge Garrard so succinctly stated: "No mention is made of using child support as a tool to promote a society where all work to their full economic potential, or make their career decisions based strictly upon the size of potential paychecks." *Id.* at 1356. Accordingly, the trial court's determination of the father's support obligation based upon his potential income was reversed because the evidence indicated that his earnings had been relatively the same at trial as they had been for the duration of the ten-year relationship resulting in the birth of the child for whom he was ordered to pay support. *Id.*

■ Likewise, here the record does not show that David is voluntarily unemployed or that his current decline in income was purposely brought about to reduce support payments. While the income from the rental properties has decreased, there is no evidence that David is operating the business differently than he did when he and

Susan were married. Because the evidence does not support a finding that David is voluntarily unemployed or underemployed, the trial court erred by making a finding as to David's potential income in determining whether modification of the support order was appropriate.

■ Having concluded that the trial court here cannot consider alleged potential income, we need not decide if the evidence supports the finding that David's potential income was $60,000–80,000. We point out, however, that the trial court sustained David's objection to the exhibits prepared by Susan showing how David could make an 8–10% return on his rental property, thereby earning an income in the $60,000 to $80,000 range. Thus, the information the trial court relied upon in making this finding was not in evidence and could not properly be considered. Upon remand, the trial court must calculate David's income for purposes of application of the guidelines without regard to potential income. Of course, in determining whether to deviate from the guidelines, the trial court is also free to consider David's assets, such as the rental properties, and expenditures on such items as vacations, new cars and a second home to determine whether David has an ability to pay child support above what his income may indicate under the guidelines. *McCallister v. McCallister* (1986), Ind. App., 488 N.E.2d 1147.

■ We are cognizant of the conflicting evidence in the record regarding David's ability to pay a larger amount in child support than his income may suggest. He travels to England 2–3 times a year to visit his parents, he owns two homes, one a vacation home, and he has bought a car and a boat in the last year. David testified that he had to borrow heavily and sell some of his rental property to meet his expenses. Resolving this evidentiary conflict is in the province of the trial court and the evidence would support a finding that David has the ability to pay child support above what his income indicates and that a modification in the support order based on his decreased income is not justified. The trial court did not make this finding; thus, we cannot use

this as a basis to affirm the trial court's judgment.

■ Turning to the trial court's finding that there was not a substantial and continuing change in circumstances such that the current support order was unreasonable, we note that this is a legal conclusion. To the extent it is supported by the finding regarding potential income, we have already addressed that issue; thus, we turn to the trial court's other findings to determine if this conclusion is supported. At the time the original order was made, David's income was approximately $40,000. At the time of the modification hearing it had decreased to approximately $19,000 and two weeks before the hearing David lost the job that provided $14,000 of that income. Although the trial court found that this was a temporary loss, the record does not support that finding. The University may eventually receive the funding to resume David's position, but such is not at all certain. In the event David were to receive that income again Susan could petition for a modification, but it was error for the trial court to disregard David's loss of 74% of his income in denying his petition for modification.

■ David also argues that the trial court should have decreased the support payment due to the added expense David incurs with his extensive visitation with his son. David's visitation arrangements with his son, where the son spends over 40% of his nights with his father, is more like a case where the parties have joint or shared custody. The guidelines do not address the problem of determining a support award in shared or joint custody situations. Commentary, Child Supp. G. 5; *Terpstra v. Terpstra* (1992), Ind.App., 588 N.E.2d 592. While this is left to the trial court's discretion for handling on a case by case basis, Child Supp. G. 1 states that one of the situations considered appropriate for a deviation from the child support guideline amount is the situation where "[t]he children spend substantially more time with the non-custodial parent than in the average case." *Terpstra, supra* at 596. In *Terpstra*, where the parties, pursuant to an agreed modification order, did have joint legal and physical custody, this court held that the trial court did not abuse its discretion when it deviated from the guideline support amount of $800 per month and lowered the father's amount to $433 per month because he had the minor children approximately 50% of the time.

■ Clearly, the record here would support a deviation from the guideline amount because John does spend substantially more time with David than in the average case. While it is within the trial court's discretion, and not required, to lower a support order based on extensive visitation as in this case, we would encourage trial courts to give this factor serious consideration. The commentary to the guidelines emphasizes that "[j]udges must also avoid the pitfall of blind adherence to the computation for support without giving careful consideration to the variables that require a varying of the result in order to do justice." Commentary, Child Supp. G. 1.

Here, the trial court found that David had not shown that he incurs significantly greater expenses than other non-custodial parents. The record is replete with the expenses David has incurred on behalf of his son. Although we may have decided this issue differently than the trial court, we cannot say the trial court abused its discretion in finding that David is not entitled to an adjustment in his support payment based on his extensive visitation.

David also argues that the trial court erred in not modifying his support order pursuant to I.C. 31–1–11.5–17 because the current order differs by more than 20% from the amount that would be ordered by applying the guidelines. The trial court did not address this argument in its findings and conclusions and because the trial court made no finding as to the amount the guidelines would call for, we cannot review this issue. Thus, on remand the trial court must make findings relevant to this issue if it determines that David is not otherwise entitled to a modification due to a change in circumstances.

## MEDICAL AND EDUCATIONAL EXPENSES

■ David next claims that the trial court erred in declining to modify the original support order that allocated to him 100% of the non-insured medical expenses and the deductible and 50% of the educational expenses. The trial court did not address this issue in its findings of fact and conclusions of law. Susan points out that David's complaint is with the original order rather than any change in circumstances making that particular part of the order unreasonable. David argues that because 6% of the presumptive guideline amount is allocated for health care expense, the trial court abused its discretion in not modifying the order so that he is not paying all of the uninsured medical expenses. With regard to the medical expenses, Susan's contention that this issue has been waived ignores the fact that the original support order was issued before the guidelines were made mandatory. The record does not disclose whether the support order was fashioned by the guidelines and we will not presume that it was. Because the guidelines are being used to determine whether the support order should be modified, it is quite appropriate to consider the fact that the guidelines include in the support amount an amount for ordinary medical expenses. David did not have this issue available to him when the original order was entered because the guidelines were not mandatory at that time. Thus, he has not waived the issue.

■ On remand, the trial court must address the issue whether David's support order requiring him to pay all uninsured medical expenses should be modified to reflect that under the guidelines 6% of the child support amount is allocated for medical expenses. A modification may be appropriate to avoid the situation where David is making double payments on some medical expenses. This will depend upon whether the support order is the presumptive amount under the guidelines. This court has held it is an abuse of discretion for the trial court to order the payment of all medical expenses in addition to the pre-

sumptive support amount under the guidelines. *Grammer v. Grammer* (1991), Ind. App., 566 N.E.2d 1080. However, this is not an inflexible rule and whether a trial court abuses its discretion depends upon the facts and circumstances of the particular case. *See Cox v. Cox* (1991), Ind.App., 580 N.E.2d 344, *trans. denied* (not abuse of discretion to order non-custodial parent to pay all medical expenses where self-employed parents did not have ready access to health insurance).

■ The guidelines do not allocate an amount to educational expenses and David does not cite to any authority supporting his contention that he should not have to pay 50% of the educational expenses. Thus, he has waived this issue.

## DUE PROCESS

David next argues that the guidelines are unconstitutionally vague, thus violating the due process clause of the United States Constitution. David makes several arguments as to the failings of the guidelines under the due process clause, but as he supports only one of those arguments with relevant authority, we will confine our review to that issue, i.e., whether the guidelines create an unconstitutional irrebuttable presumption. David argues that the presumption of a correct child support order based on the guidelines is irrebuttable because the guidelines do not indicate the economic basis for the figures used in the child support tables (i.e., the proportionate amounts for housing, food, transportation, clothing, recreation, education, etc). The absence of an explanation of how the table of figures was derived, David argues, makes it impossible for a party to rebut the guideline presumption because no notice is given of what *specifically* a party must show to prove the guidelines should not apply to the particular party. David relies on a case decided by the Court of Appeals for the District of Columbia, in which the court struck down the similar D.C. guidelines. *Fitzgerald v. Fitzgerald* (1989), D.C.App., 566 A.2d 719.

While the court in *Fitzgerald* did recognize that "the party trying to argue against

application of the Guideline faces a monumental obstacle in attempting to demonstrate a case is 'exceptional' without knowing what 'unexceptional' is," the court did not determine that the Guideline adopted in the District of Columbia was unconstitutionally vague in violation of the due process clause. The court did conclude that the Guideline was invalid because it was adopted by the Superior Court, which lacked authority to adopt rules that changed substantive law. *Id.* at 732. Subsequently, the legislature cured that flaw and the Guideline has since then withstood due process constitutional attack. *A.S. v. District of Columbia ex. rel. B.R.* (1991), D.C.App., 593 A.2d 646.

▮▮▮▮▮ Legislation is clothed with a presumption of constitutionality. *Miller v. State* (1987), Ind., 517 N.E.2d 64. We know of no reason why rules adopted by the Supreme Court should not be clothed with the same presumption; and, indeed, David does not argue to the contrary. Thus, we will apply to the guidelines the same analysis used to determine if a statute is unconstitutional. Only statutes so vague that men of ordinary intelligence must guess at their meaning and differ as to their application violate due process. *Neudecker v. Neudecker* (1991), Ind.App., 566 N.E.2d 557, *aff'd* 577 N.E.2d 960. The specificity that due process requires may be ascertained by reference to the entire text of the statute, to well-settled common law meanings, to prior judicial decisions, to similar statutes, or to common, generally accepted usage. *Neudecker*, 566 N.E.2d at 562.

▮▮▮ The guidelines provide that

[i]n any proceeding for the award of child support, there shall be a rebuttable presumption that the amount of the award which would result from the application of the Indiana Child Support Guidelines is the correct amount. [Indiana Child Support Rule 2.]

\* \* \* \* \* \*

If the court concludes from the evidence in a particular case that the amount of the award reached through application of the guidelines would be unjust, the court shall enter a written finding articulating the factual circumstances supporting that conclusion. [Child Supp. R. 3.]

▮▮▮ The guidelines do not stand alone, in a vacuum. The guidelines are consistent with Ind.Code 31–1–11.5–12, which places a duty for child support upon either or both parents based upon (1) the financial resources of the custodial parent, (2) the standard of living the child would have enjoyed had the marriage not been dissolved, (3) the physical or mental condition and educational needs of the child, and (4) the financial resources and needs of the noncustodial parent. Child Supp. G. 1. Thus, as a starting point for guidance in the application of the guidelines, we may look to I.C. 31–1–11.5–12 and the extensive body of caselaw interpreting that statute.

▮▮ Additionally, the commentary to the guidelines discusses the research relied upon in their development, explains why the Income Shares Model was selected, and suggests circumstances that may prompt a trial judge to deviate therefrom. Commentary to Child Supp. G. 1. Thus, parents who seek to rebut the presumption can find guidance as to how the guidelines are applied and what factors may rebut the presumption. Of course, the question whether the guideline amount has been rebutted is committed to trial judge discretion. However, not knowing how a trial court will exercise its discretion does not make the guidelines unconstitutionally vague. *Neudecker, supra.*

The child support guidelines do not violate the due process clause of the United States Constitution.

### EQUAL PROTECTION

▮▮ David next argues that the guidelines violate the equal protection clause of the United States Constitution. David states the general proposition that "to satisfy the guarantee of equal protection, classifications must be 'reasonable, not arbitrary' so that all persons similarly circumstanced shall be treated alike." (Brief of Appellant, p. 28, citing *Johnson v. St. Vin-*

*cent Hospital, Inc.* (1980), 273 Ind. 374, 404 N.E.2d 585.) However, David offers no relevant or controlling authority for his less-than-cogent argument that the guidelines violate the equal protection guarantee and he therefore waives this argument. Ind. Appellate Rule 8.3(A)(7).

The trial court's judgment denying David's petition for modification is reversed and remanded for further proceedings to determine, based on a realistic rather than hypothetical appraisal of David's income, whether a substantial and continuing change in circumstances exists such that the current support order is unreasonable, and whether the current support order deviates by at least 20% from the amount that would be ordered by applying the child support guidelines to the properly considered income of the parties. In all other respects the trial court's judgment is affirmed.

RUCKER and GARRARD, JJ., concur.