## MEMORANDUM DECISION

Pursuant to Ind. Appellate Rule 65(D),
this Memorandum Decision shall not be
regarded as precedent or cited before any
court except for the purpose of establishing
the defense of res judicata, collateral
estoppel, or the law of the case.



FILED

Oct 30 2019, 9:44 am

CLERK
Indiana Supreme Court
Court of Appeals
and Tax Court

APPELLANT, PRO SE

Stephen Murphy
Indianapolis, Indiana

ATTORNEY FOR APPELLEE

Joshua G. Orem
Law Offices of Steven K. Deig,
LLC
Evansville, Indiana

# IN THE
# COURT OF APPEALS OF INDIANA

Stephen Murphy,

*Appellant-Petitioner,*

v.

Suzanne Murphy,

*Appellee-Respondent.*

October 30, 2019

Court of Appeals Case No.
19A-DR-261

Appeal from the Vanderburgh
Superior Court

The Honorable Robert R.
Aylsworth, Special Judge

Trial Court Cause No.
82D05-1606-DR-848

**Pyle, Judge.**

## Statement of the Case

[1] Stephen Murphy ("Father"), *pro se*, appeals the dissolution court's denial of his

motion to modify parenting time with his children. He specifically argues that

the dissolution court abused its discretion when it denied this motion and that there has been no final custody order issued in this case. Finding no abuse of the dissolution court's discretion, we affirm the dissolution court's denial of Father's motion to modify parenting time. However, because there is no final custody order contained in the record, we remand the case to the dissolution court with instructions to enter one.

[2] We affirm and remand with instructions.

## Issue

Whether the dissolution court abused its discretion in denying Father's motion to modify parenting time.

## Facts

[3] Father and Suzanne Murphy ("Mother") are the parents of the following five children: (1) daughter V.M., ("V.M."), who was born in November 2003; (2) daughter F.M., ("F.M."), who was born in March 2009; (3) son A.M., ("A.M."), who was born in May 2012; (4) son M.M., ("M.M."), who was born in November 2014; and (5) daughter L.M., ("L.M."), who was born in December 2016. Father filed a dissolution petition in June 2016 in Vanderburgh County where he was a practicing attorney.

[4] Two weeks later, Vanderburgh County judges recused themselves *en banc*. Four days later, the parties agreed to the appointment of the Honorable Brent Almon from Posey County as a special judge ("Judge Almon"). After Father made numerous attempts to remove Judge Almon, including filing: (1) a motion for a

change of judge; (2) a praecipe to withdraw the case from the judge, appoint a Marion County judge, and transfer the case to Marion County; (3) a petition for a writ of mandamus and prohibition, Judge Almon recused himself in March 2017. The case was subsequently assigned to the Honorable Robert Krieg from Gibson County ("Judge Krieg").[1]

[5] During the pendency of the dissolution proceedings, Mother and the five children moved to Indianapolis, and Father received parenting time every other weekend. In April 2017, when Father was picking up the children for parenting time, he and Mother became involved in an altercation that led to the Department of Child Services ("DCS") removing the children from both parents and placing them in foster care. In August 2017, both parents admitted that their children were children in need of services ("CHINS") and agreed to complete recommended services. Father specifically agreed to: (1) participate in supervised visitation with the children; (2) complete a twenty-six-week domestic violence counseling program; (3) attend counseling with therapist Angelique Parker ("Therapist Parker"); (4) complete home-based therapy; and (5) complete parenting education.

[6] Three months later, in November 2017, Father filed a request to close the CHINS case. Mother, DCS, and the Guardian Ad Litem ("GAL") filed

---

[1] Father also made several unsuccessful attempts to remove Judge Krieg, including filing: (1) two motions to transfer venue to Marion County; (2) two praecipes to withdraw the case from the trial court; (3) two motions for a change of venue from the judge; (4) a motion for automatic change of judge pursuant to Indiana Trial Rule 76(B); and (5) a praecipe to remove the case from the judge.

responses in opposition to Father's request. Following a hearing, the CHINS court ("the CHINS court") issued a December 2017 order, which found that the supervisor of Father's parenting time felt threatened by Father and had safety concerns for the children and herself based on the behaviors that she had observed from Father during supervised parenting time. The CHINS court's order specifically found as follows in this regard:

> 7.     [Father] tries to control the situation and becomes upset when [the supervisor] does not permit this. [The supervisor] has observed aggressive behavior from the Father and has observed him become agitated. This has resulted in her feeling threatened by him and she feels that he is a safety concern to the three younger children who are 5 years old and younger and cannot communicate at all or very well. During parenting time at Eagle Creek Park, [the supervisor] had to redirect the Father because he was permitting [M.M.] (approximately three years old) and [A.M.] (five years old) to get too close to the banks of the reservoir as it was getting dark[.] The Father was at McDonald's with some type of pocket knife which the Father made visible to [the visitation supervisor] during supervised parenting time. She also observed the Father pick fights with [V.M.] in public places and then [V.M.] will threaten that she is going to leave and the Father's response to [V.M.] is 'you can't leave and then he threatens to harm her.' [The supervisor] has been trying to assist the Father with [V.M.] and teach him it is about the approach by the parent to the child and that he must be the adult and take a mature approach with all of his children[.] [The supervisor found] the children's fears of their Father [were] genuine and that the Mother [was] not trying to alienate Father or brainwash the children.

8.      Both [V.M.] and [F.M.] have expressed fear of their Father and [F.M.] has developed a safety plan because she has a great deal of anxiety along with her fear of her Father.

(Mother's Exhibit I).

[7] The CHINS court also made the following additional findings: (1) Father had threatened to sue the parenting time supervisor and the agency that she worked for because the supervisor had refused to recommend unsupervised parenting time; (2) Father had challenged the competency of Therapist Parker, who worked with V.M., F.M., and A.M., and had sent her a set of ethical guidelines that he thought she should follow; (3) Father had refused to complete the services that he had previously agreed to complete; (4) Father believed that Mother was engaging in parental alienation and that DCS and the GAL were both ignoring it; (5) Father believed that if he had to undergo a psychological evaluation he should be awarded additional parenting time; (6) Father believed that DCS was engaging in child abuse and he had no choice but to refuse services even though he had previously agreed to complete them; (7) Father had given notice to the DCS family case manager ("FCM") that she had deprived him of his constitutional rights and that he had a right to sue her in federal court; and (8) V.M. and F.M. refused to attend parenting time because they were afraid of Father.

[8] The CHINS court further noted that Mother had completed the court-ordered services and continued to attend therapy. In addition, the CHINS court

pointed out that "[i]n the pending divorce, Mother had sole legal and physical custody of the children." (Mother's Exhibit I).

[9] The CHINS order further provided as follows:

> 24. When judging the credibility of witnesses in this case, this Court does not find the Father's testimony [to be credible] but does find all other witnesses are credible. The Father is arguing that everyone else is wrong and that he has done what he is supposed to and that this is a parental alienation case.
>
> 25. This Court strongly disagrees with the Father. The evidence strongly supports the fact that the Father wants to control this process and when he cannot he threatens the DCS FCM, the family therapist, and the visitation supervisor in an attempt to get his way. The evidence presented clearly demonstrates that the Father is also controlling with Mother. The mental health evaluation recommended Father undergo psychological testing. This Court finds that Father is behaving in an aggressive, threatening manner, that he becomes easily agitated and that he poses a safety concern to his children if he is not supervised when he exercises parenting time with his children.
>
> \*     \*     \*     \*     \*
>
> 29. The Court will permit supervised parenting time with [L.M., M.M., and A.M.] as previously ordered. However, this Court has concerns about [V.M.]'s physical safety when with Father even when the parenting time is supervised and has safety concerns about [V.M. and F.M.]'s mental and emotional well-being if with Father under a supervised setting. The evidence demonstrates that the Father presents a safety concern to [V.M. and F.M.] Thus, the Court hereby modifies the Father's

parenting time with [V.M. and F.M.] to continue to be supervised but that it must take place in an agency environment to ensure the safety of [V.M. and F.M.] The Court strongly encourages [V.M. and F.M.] to attend parenting time.

30.    The Court finds that all the above findings and orders of this Court are in the best interest of the minor children and to protect the children and to ensure their physical safety and mental/emotional well-being.

(Mother's Exhibit I). The CHINS court denied Father's request to close the case and explained that when the CHINS case was eventually terminated, the CHINS court's custody and parenting time order would survive the termination of the CHINS proceedings until the dissolution court assumed primary jurisdiction of the case to address all of the issues.

[10] Two months later, in February 2018, the CHINS court issued an order suspending Father's parenting time with all five children until he completed all services in the CHINS matter. The CHINS court specifically concluded that it was "clear by [Father's] behavior during the course of this case that he [was] a danger to his children and it [was] in their best interest to not see their Father as he pose[d] a danger to their physical, mental and emotional well-being." (Mother's Exhibit B at 9). The CHINS court also concluded that Father was "an abusive litigant who [would] not stop filing pleadings until the Court [found] in his favor on matters which ha[d] been previously litigated and/or agreed to by [Father]." (Mother's Exhibit B at 9). The CHINS court further concluded that Father's abusive litigation tactics were a substantial burden on

the CHINS court, DCS, the GAL, and Mother and pointed out that Father had filed several motions to remove the CHINS court judge. According to the CHINS court, it had no bias or conflict in the case, and it was clear that Father wanted another judge to handle the matter so he could convince that judge that it should rule in his favor on prior motions and issues which had already been litigated. Father did not appeal the CHINS court's order suspending his parenting time.

[11] Less than two weeks later, Judge Krieg held a dissolution hearing and entered a decree dissolving the marriage and taking any other matters under advisement ("Dissolution Court Order 1"). In March 2018, Judge Krieg entered an order taking judicial notice of all orders regarding child custody and child visitation entered by the CHINS court and adopting as its own rulings the CHINS court's decisions regarding child custody and visitation ("Dissolution Court Order 2"). Thus, Father's parenting time remained suspended.

[12] In June 2018, after Father filed a motion to modify the dissolution decree and a motion for automatic change of judge. Thereafter, the dissolution matter was assigned to the Honorable Amy Steinkamp Miskimen from Warrick County ("Judge Miskimen").[2]

---

[2] Father had also initiated an appeal of the dissolution order, but the appeal was dismissed in September 2018.

[13]     In August 2018, the parties and the CHINS court signed an agreement to dismiss the CHINS case. As a condition of the dismissal, the parties agreed that the current CHINS order regarding custody and parenting time would "stand as to any parenting time in the dissolution matter and the dissolution court [could] resolve any future pleadings." (Mother's Exhibit D). The same day that the parties entered into the agreement, Father filed in the dissolution court a motion to establish custody and modify parenting time, wherein he asked that court to determine custody and modify parenting time immediately. It is the denial of this motion that precipitated this appeal.

[14]     In December 2018, Judge Miskimen recused herself from the dissolution proceeding "due to [Father] having filed two (2) separate Praecipes for Withdrawal of Special Judge and one (1) complaint against her with the Indiana Supreme court." (CCS at 40). Following Judge Miskimen's recusal, the Honorable Robert Aylsworth from Warrick County ("Judge Aylsworth") was assigned to the dissolution case as a special judge on December 20, 2018. Judge Aylsworth assumed jurisdiction of the case seven days later on December 27, 2018. Less than a week later, before Judge Aylsworth had issued any orders in the case, Father filed a motion requesting that Judge Aylsworth disqualify himself from the case. Judge Aylsworth explained as follows when it denied Father's motion the following day:

> The special judge was required to accept this case because there were no grounds under the rule allowing the special judge to decline the appointment. There are still no grounds for the

> special judge to do so. The Father's motion for the special judge to disqualify is now denied[.]

(Appellant's Amended App. at 40-41). Later that month, Father filed a second motion to disqualify Judge Aylsworth, which the judge also denied.

[15] In March 2019, the dissolution court held a hearing on Father's August 2018 motion to determine custody and modify the parenting time order. The evidence revealed that GAL Jillian Moon ("GAL Moon") had completed a fifteen-page single-spaced report that included interviews with Mother, Father, the five children, Therapist Parker, a Child Advocates supervisor, the visitation supervisor, and a friend of Father's. The report, which was admitted into evidence, included the following relevant information: (1) V.M. was scared of Father because he had hit her with a large stick in the past; (2) V.M. had witnessed Father attacking Mother a few days after M.M.'s birth, and V.M. had to grab the infant off the floor because she was afraid that Father would either step on him or shake him; (3) V.M. had been diagnosed with post-traumatic stress disorder and took medication for anxiety and depression; (4) Father alleged that Mother had lied about everything; (5) Therapist Parker alleged that Father had harassed and threatened her because he wanted her to state "that parental alienation was taking place;" (6) Mother alleged that Father was emotionally, financially, and sexually abusive to her during the marriage, and her allegations were corroborated, at least in part, by children old enough to remember and articulate them; (7) Mother's reports about Father were also corroborated by multiple professionals who had interacted with them. The

GAL's report concluded that her "job . . . was to uncover . . . what [was] in [the children's] best interest based on the current set of circumstances." (Mother's Exhibit A). The report further concluded that it was in the children's best interest to leave in place the current order suspending Father's parenting time because there had been no substantial or continuing change in circumstances.

[16] Also at the hearing, Mother testified that V.M. had been present when Mother was "abused by [Father] physically, emotionally, sexually, [and] financially." (Tr. 109). Mother also testified that Father had refused to participate in services and that her position was that until Father took "actions to improve his situation . . . nothing should change." (Tr. 140). Mother further testified that during the pendency of the CHINS proceedings, Father had filed 270 pleadings in that case and "there had been no improvement in the nature of filing pleadings" in the dissolution case. (Tr. 116). According to Mother, during the prior year from March 2018 until March 2019, she had incurred $32,000 in attorney fees to defend this matter. She asked the trial court to order Father to pay these fees.

[17] Father testified that Mother had lied to DCS and to the courts and that everything in the GAL's report was untrue. Father further testified that the CHINS court had issued orders about him that were untrue and that he had agreed to dismiss the CHINS case because "it was the respectful thing to do . . . . to let [the CHINS] judge off the hook[.]" (Tr. 65). Father further declared that "[w]hat was going on in this case right now [was], in [his] estimation, a mockery[,]" and that the CHINS case had been a "sham." (Tr. 65, 119).

According to Father, DCS was corrupt and Therapist Parker had been "duped by Mother to believe [Father was a] crazy, scary guy to the point that she commit[ed] defamation per se against [him] to [the GAL] in this case." (Tr. 88).

[18] Following the hearing, the dissolution court entered an order denying Father's motion to amend parenting time in April 2019 ("Dissolution Court Order 3). Specifically, the order provides, in relevant part, as follows:

> 16. The substance of [Father's] testimony at the hearing was to reiterate and confirm his prior positions and statements which have previously been rejected by the earlier judges in this case, as well as [the CHINS court judge]. The court did not hear any testimony from [Father] regarding efforts he had made to address the issues and concerns raised earlier in this case which gave rise to the order suspending his parenting time until rehabilitative services are received to improve [Father's] personal situation, as well as his situation regarding the children. It appears that much counseling and reunification therapy must be done before serious consideration can be made to modifying the prior order of the court suspending [F]ather's parenting time. . . . Not only has there not been a substantial change of circumstances since the order of suspension was entered, there really has been no change of circumstances since the prior order was entered.

> 17. [F]ather is correct that, as a general proposition, he has a right to be a parent and to parent his children. However, the law is clear that a right of parenting time is subordinated to the best interests of the children, as it has been in this case.

18. The court would take encouragement from any efforts made by [Father] to address the issues raised and the issues discussed and ruled upon by the prior judge in this matter. However, the court can take no encouragement by the fact that nothing has been done over the past year to show any improvement in [Father's] personal situation or in relation to his relationship with the children.

19. Because there has been no substantial change of circumstances, or really any change of circumstances whatsoever, since the prior orders of the court suspending [Father's] parenting time with the children, the court cannot and has no basis upon which to grant [Father] any relief toward terminating the earlier order suspending his parenting time. As such, [Father's] request for modification must be and is hereby denied.

(Amended App. Vol. 2 at 46). The dissolution court also denied Father's request that it abate child support and ordered Father to pay $20,000 to Mother's attorney. Father now appeals.

# Decision

[19] At the outset, we note that Father contends that no final custody order has been issued in this case. Our review of the record of the proceedings, including the forty-five-page Chronological Case Summary in the dissolution action and the many court orders issued over the years, reveals that Father is correct. Although the CHINS court stated in its December 2017 order that Mother had sole legal and physical custody in the pending divorce, we have found no provisional order reflecting this status. In addition, we note that the CHINS court's December 2017 order explained that when the CHINS case was

eventually terminated, the CHINS court's custody and parenting time order would survive the termination of the CHINS proceedings until the dissolution court assumed primary jurisdiction of the case to address all of the issues. We further note that Dissolution Court Order 2 provided that the court had taken judicial notice of all orders regarding custody and visitation entered by the CHINS court and adopted as its own rulings the CHINS court's decisions regarding child custody and visitation. However, we have found no final child custody order in either proceeding. Nor has Mother directed us to one. We therefore remand this case to the dissolution court to issue a final custody order. We now turn to the substantive issue in this case.

[20] Father argues the dissolution court abused its discretion when it denied his motion to modify parenting time. Our standard of review in cases involving a modification of parenting time are well-settled. On review, we will neither reweigh the evidence nor judge witness credibility. *Moell v. Moell*, 741, 745 (Ind. Ct. App. 2017). We grant latitude and deference to the trial court and will reverse only upon a showing of manifest abuse of discretion. *Id.* No abuse will be found if there is a rational basis in the record supporting the trial court's determination. *Id.* It is not enough that the evidence might support some other conclusion. *Id.* It must positively require the conclusion contended for by appellant before there is a basis for reversal. *Id.*

[21] INDIANA CODE § 31-17-4-2 provides as follows:

> The court may modify an order granting or denying parenting time rights whenever modification would serve the best interests

of the child. However, the court shall not restrict a parent's parenting time rights unless the court finds that the parenting time might endanger the child's physical health or significantly impair the child's emotional development.

In other words, "a factual basis and a finding as to the potential endangerment of [the child's] physical health or safety or significant impairment of his emotional development are necessary." *Rickman v. Rickman*, 993 N.E.2d 1166, 1169 (Ind. Ct. App. 2013).

[22] Here, Father argues that the dissolution court "made no finding that [his] parenting time with his children would cause physical harm or substantially impair their emotional development." (Father's Amended Brief at 19). However, our review of the evidence reveals that it was the CHINS court, in its February 2018 order, that initially restricted Father's parenting time rights after finding that it was in the best interest of all the children to not see their Father "as he pose[d] a danger to their physical, mental and emotional well-being." (Mother's Exhibit B). The CHINS court based this finding on testimony that Father's two oldest children were afraid of him. V.M. was suffering from post-traumatic stress, and F.M. had an escape plan because of her anxiety and fear of Father. The CHINS court's order further found that the visitation supervisor had a safety concern for the three younger children who could not communicate at all or very well.

[23] The dissolution court took judicial notice of the CHINS court's order in its March 2018 dissolution order. In April 2019, following a hearing, the

dissolution court issued an order on Father's motion to modify parenting time. In that order, the dissolution court relied on the findings and conclusions in the 2018 CHINS order. In addition, the dissolution court found that V.M. and F.M. still saw Father as abusive to them. V.M. was seeing a psychologist and a counselor and took medication for depression and anxiety. The dissolution court further found that Father had done nothing in the previous year to show any improvement in his relationship with the children. Because of the lack of improvement, the dissolution court concluded that it had no basis upon which to grant Father's motion to establish parenting time and that Father's right of parenting time had been subordinated to the best interests of his children. We find no abuse of the dissolution court's discretion. [3]

---

[3] Father also asks this Court to order Judge Aylsworth to recuse himself because "[n]o part of his current order is favorable to Father or reasonably supported by the evidence and there is absolutely not one negative about Mother." (Father's Amended Br. 23). Although the mere appearance of bias and partiality may require recusal if an objective person, knowledgeable of all the circumstances, would have a rational basis for doubting the judge's impartiality, *In re Adoption of M.H.*, 15 N.E.3d 612, 624 (Ind. Ct. App. 2014), *trans. denied*, adverse rulings and findings by a trial court judge are not sufficient reason to believe the judge has a personal bias or prejudice. We therefore decline Father's request that we order Judge Aylsworth to recuse himself.

Father further argues that the dissolution court abused its discretion in ordering him to pay $20,000 to Mother's attorney. According to Father, "$20,000 is far beyond the abuse of discretion standard. It is scandalous." (Father's Amended Br. 23). However, Father has waived appellate review of this issue because he has failed to support it with cogent argument and relevant authority. *See Kentucky Nat'l. Ins. Co. v. Empire Fire and Marine Ins. Co.*, 919 N.E.2d 565, 598 (Ind. Ct. App. 2010) (holding that argument was waived for failure to cite authority or provide cogent argument). Waiver notwithstanding, we find no error. An award of attorney fees in a dissolution of marriage action is reviewed for an abuse of discretion. *Mason v. Mason*, 775 N.E.2d 706, 711 (Ind. Ct. App. 2002), *trans. denied*. We will reverse such an award only if it "is clearly against the logic and effect of the facts and circumstances before the court." *Id.* Misconduct that directly results in additional litigation expenses may properly be taken into account in the trial court's decision to award attorney fees in a dissolution proceeding. Here, the dissolution court had before it evidence of Father's litigation tactics, which were aggressive and costly to defend against. Under these circumstances, the dissolution court did not abuse its discretion in ordering Father to pay Mother's attorney fees of $20,000.

Lastly, Father argues that the dissolution court should have granted his request to abate child support. He specifically argues that the child support guidelines are unconstitutional because they deny him due process.

Affirmed and Remanded with Instructions.

Robb, J., and Mathias, J., concur.

---

According to Father, after paying child support, he has "no money to maintain a home to exercise constitutional parenting time[.]" (Father's Amended Br. 27). Father, however, has waived appellate review of this argument because he has failed to support it with cogent argument and the five pages in his appellate brief devoted to it include no citation to authority. *See Kentucky Nat'l. Ins. Co.*, 919 N.E.2d at 598. We further note that this Court has previously determined that the child support guidelines do not violate due process. *See Garrod v. Garrod*, 590 N.E.2d 163, 171 (Ind. Ct. App. 1992).